**SANTA FE ENGINEERS, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 85–2682.**

United States Court of Appeals, Federal Circuit.

April 18, 1986.

sitting by designation.

Robert J. Martinez, Kilcullen, Wilson and Kilcullen, Washington, D.C., argued for appellant.

Richard W. Oehler, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued for appellee; with him on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director; Bernadine T. Harrity, Office of Gen. Counsel, Veterans Admin., of counsel.

Before DAVIS and SMITH, Circuit Judges, and RE, Chief Judge.[*]

DAVIS, Circuit Judge.

This appeal from the Veterans Administration Board of Contract Appeals (VABCA) presents the legal question of the correct interpretation of a contract provision used by the Veterans Administration (VA) in its construction contracts. The VABCA upheld the Government's understanding of the reach and validity of that clause, and rejected those of appellant contractor. VABCA No. 1832, 85–2 B.C.A. (CCH) ¶ 18,008 (1985). We affirm.

## I.

In 1979 Santa Fe Engineers, Inc. (contractor) entered into an agreement with the VA for the construction of an outpatient clinic addition and research and education addition at the VA Medical Center, Nashville, Tennessee. In the course of that work, the VA issued a change order substituting gypsum board ceilings in lieu of acoustical tile ceilings in one part of the addition. The parties partially agreed upon an equitable adjustment for that change, increasing the contract price by $38,826.11 and granting a 14–calendar-day time extension. There was no dispute as to the amount to be allowed for the direct costs of the change, but there was a dispute as to delay overhead. The contract contained clauses limiting the amount allowable for overhead and profit (on the changes). The VA insisted that those limits covered all claims for overhead, including overhead claims with respect to the 14–day delay authorized by the change order. The contractor countered that those overhead limits related only to overhead connected with direct costs, not to overhead incurred in connection with the two-week delay. In accepting the change order, the contractor specifically reserved the right to submit a claim for the delay overhead costs.

Such a claim was submitted but was denied by the contracting officer. On appeal to the VABCA, that tribunal held that the contract clause (relating to the limits on overhead) covered delay overhead as well as direct-costs overhead, and the contractor (which did not contest the calculation of the overhead limits if they applied here) had therefore been properly compensated.

## II.

The VA contract clause on overhead which grounds the dispute is G–10, CONTRACT CHANGES, providing in pertinent part:

A. Clause 3, Changes and Clause 4, Differing Site Conditions of General Provisions (Construction Contract) are supplemented as follows:

\* \* \* \* \* \*

4. Allowances not to exceed 10 percent each for overhead and profit for the party performing the work will be based upon the value of labor, material and use of construction equipment required to accomplish the change. As the value of

---

[*] The Honorable Edward D. Re, Chief Judge, United States Court of International Trade, sitting by designation.

the change increases, a declining scale will be used in negotiating the percentage of overhead and profit. Allowable percentage on changes will not exceed the following: 10% overhead and 10% profit on first $20,000; 7½% overhead and 7½ profit on next $30,000; 5% overhead and 5% profit on balance over $50,-000.

\* \* \* \* \* \*

9. Overhead and Contractor's fee percentage shall be considered to include insurance other than mentioned herein, field and office supervisors and assistants, watchman, use of small tools, incidental job burdens, and general home office expenses, and no separate allowance will be made therefore.[1]

Appellant's position, as we have said, is that this provision does not impose any limit on overhead connected with delay resulting from the change. In principal support of that contention, the contractor first points out that (a) the contractual Changes clause (Clause 3) is uniform throughout the Government and mandatory; (b) this Changes clause was specifically amended in 1967 to cover delay expense due to a change,[2] and (c) the Changes clause as so amended sets no limit to the recovery of delay overhead costs actually and reasonably incurred. It is thus contended that (i) the terms of G–10 need not be read to cover delay overhead, and should not be so interpreted because in effect that would deprive the contractor of reimbursement for its delay overhead; (ii) if nevertheless G–10 is so read (as the VABCA did), that provision conflicts with the amended Changes clause by eliminating a large part (if not all) of delay overhead, in contravention of the broad reach of the amended Changes clause; (iii) in case of such a conflict, the mandatory Change clause prevails; and (iv) adoption of the VABCA's

interpretation would be unfair and inequitable to the contractor which is likely to recover very little or none of its overhead connected with a conceded delay due to the Change order.

This is not an unsubstantial or unreasonable argument, but we think that in the end it cannot prevail. We note, at the outset, that the literal words of G–10 blanket delay overhead as well as overhead on the direct costs incurred by the contractor. There is nothing in the language of G–10 differentiating delay overhead in any way from direct costs overhead. Appellant thus gets no help from the bare language of G–10, but must rely (as it does) on various canons of contract construction.

One of these is the general principle of *contra proferentem* where the contractor's reading of an ambiguous contract provision is reasonable in itself. The difficulty with applying that canon in this case is that G–10 is drawn directly from a procurement regulation adopted by the VA, 41 C.F.R. § 8–7.650–21 (1982). Our predecessor court has held that agency regulations are not governed by the *contra proferentem* principle but rather by deference to the reasonable and consistent administrative interpretation. *Honeywell, Inc. v. United States,* 661 F.2d 182, 186, 228 Ct.Cl. 591 (1981). This same rule of proper deference has continued to be applied to procurement regulations. *Paul E. Lehman, Inc. v. United States,* 673 F.2d 352, 355, 230 Ct.Cl. 11 (1982). The showing here is that the VA has consistently interpreted G–10 in the way the VABCA did in this instance. *See Colton Construction Co.,* VABCA No. 1574, 83–1 BCA ¶ 16,220 (1982); *West Land Builders,* VABCA, No. 1664, 83–1 BCA ¶ 16,235 (1983), *aff'd,* 732 F.2d 166 (Fed.Cir. 1984); *Jack Cooper Construction Co., Inc.,* VABCA No. 1663, 84–3 BCA ¶ 17,703

---

1. Clause G–10, a Veterans Administration regulation, is published at 41 C.F.R. § 8–7.650–21 (1982).

2. The 1967 change was officially explained as adding "including delay expense" to the substance of the Changes provision: "An equitable adjustment clearly encompasses the effect of a change order upon any part of the work, including delay expense." 32 Fed.Reg. 16,269 (1967). The purpose was to eliminate the doctrine of *United States v. Rice,* 317 U.S. 61, 63 S.Ct. 120, 87 L.Ed. 53 (1942). *See* 32 Fed.Reg. 16,269 (1967).

(1984). And in view of the clause's own wording, that construction cannot be said to be unreasonable. The administrative interpretation is therefore a decided plus for the Government (even though the contractor's reading may likewise be reasonable).

Another of appellant's points is that G–10 conflicts with the uniform and mandatory Changes clause, as amended to cover delay damages. The VA regulation, however, declares that it is "supplementing" the Changes clause, thus indicating that the provision is a part of the Changes clause for VA contracts (not a deviation from that clause, nor a separate or conflicting provision). 41 C.F.R. § 8–1.108(a) (1982). Under the VA Procurement Regulation, the agency is permitted to supplement standard contract clauses in the areas not covered by the mandatory clause. 41 C.F.R. § 8–1.108(b) (1982).[3] Though the contractor urges strongly that G–10 (as interpreted by the Government) is necessarily a deviation from, or in conflict with, the uniform Changes clause, the Court of Claims has in effect already held that not to be so. *Jack Picoult Construction v. United States*, 529 F.2d 532, 207 Ct.Cl. 1052 (1975), directly applied, without question, the overhead limits of a clause fully comparable to G–10. Though that case involved the concept of overhead, the overhead was not connected with delay damages but rather with direct costs. However, that difference is wholly immaterial to the problem of a conflict with the standard Changes clause. The uniform provision no more contains a limit on overhead with respect to direct costs than it does for delay damages; if the former may be supplemented by overhead limits, as our predecessor court in substance held,[4] then so

may the latter. In that respect, both classes of overhead are on a par.[5]

Moreover, the VA's purpose to fill in interstices in the uniform Changes clause, rather than to depart from it, is shown by the use of the word "supplement" (with its clear definition in the VA procurement regulation) plus the continued administrative interpretation. This is not as strong a case for the Government's purpose as was *General Builders Supply Co. v. United States*, 409 F.2d 246, 187 Ct.Cl. 477 (1969), but there is a sufficient showing of the VA's intent to add to (but not conflict with) the Changes provision so as to warrant our rejection of appellant's argument.[6]

Finally, the contractor says that it is unfair and inequitable to include delay overhead within the general overhead limits established by G–10 because overhead on direct costs is likely to absorb all the overhead allowable, and to leave no "room" for delay overhead. But that result is not certain. G–10's precise formulation is that the 10% limit for overhead is a ceiling, not a requirement, and it may well be that there will be cases in which direct cost overhead totals less than the allowable 10% and where delay overhead can make up the difference. In any event, the rule on those uniform contract clauses found to conflict with other contract provisions is that the court "will construe the agreement, to the extent it is fairly possible to do, *so as not to eliminate the standard article or deprive it of most of its ordinary coverage.*" *Morrison-Knudsen Co. v. United States*, 397 F.2d 826, 829 (Ct.Cl.1968) (emphasis added). There is no solid showing in this case that the Changes article will be eliminated by G–10 or that it will be deprived "of most of its ordinary coverage"—even

---

3. In contrast, deviations require special procedures and call for an explicit cross reference to the Federal Procurement Regulations. 41 C.F.R. § 8–1.108(c) and § 8–1.109 (1982).

4. Appellant, too, does not contest the application of the overhead limits to the overhead related to direct costs.

5. Though the standard Changes clause, as amended, permits the award (without limita-

tion) of all reasonably incurred overhead costs, there is nothing explicit in the clause prohibiting the imposition of overhead limitations by the procuring agencies.

6. There is no suggestion that appellant inquired from the Government (as to the scope of G–10) before bidding on or accepting the award of the contract.

with respect to delay overhead. On this record, no such finding can be made.

For these reasons, we cannot accept appellant's reading of G–10 nor can we hold that that clause conflicts with the standard Changes provision.

AFFIRMED.