**CYR CONSTRUCTION COMPANY,
Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Nos. 90–3977C, 90–3978C.**

United States Court of Federal Claims.

Nov. 18, 1992.

Joseph A. McManus, Jr., Washington, D.C., for plaintiff. Jotham D. Pierce, Jr., of counsel.

Deborah A. Bynum, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## MEMORANDUM OF DECISION

HARKINS, Senior Judge.

CYR Construction Company (plaintiff) was awarded two formally advertised firm fixed price construction contracts by the Army Corps of Engineers for work at Loring Air Force Base, Limestone, Maine. Work under the contracts was concurrent. The contracts were on standard forms, and included General Provisions (construction contract), 1 May 1983 Ed., as amended.

Contract No. DACA51–84–C–0043 (contract—0043), priced at $5,684,510 was awarded on October 31, 1983, for work that was designated Upgrade Alert Area. The work included construction of three supply facility buildings, TAC aprons, and related work. The Notice to Proceed was acknowledged by CYR on March 20, 1984. All work was to be completed within 540 calendar days thereafter (Sept. 10, 1985).

Contract No. DACA51–84–C–0073 (contract—0073), priced at $3,050,878 was awarded on February 17, 1984, for the construction of the ADAL Alert Crew Facility. The work included a structural concrete building for Alert Forces, and a separate structure for visitation purposes. The Notice to Proceed was acknowledged by CYR on March 20, 1984. All work was to be completed within 720 calendar days (Mar. 10, 1986).

During the course of work, 22 bilateral modifications were issued on contract—0043, which increased the contract amount to $5,790,578. Five of the modifications included time changes that extended the completion date 471 days, to December 31, 1986.

During the course of work, 13 bilateral modifications were issued on contract—0073, which increased the contract amount to $3,155,601. Four of the modifications included time changes that extended the completion date 174 days, to August 31, 1986.

By November 27, 1985, 94.9 percent of the work had been done on contract—0043, and the contract was substantially complete. By April 4, 1986, 97 percent of the work had been done on contract—0073, and

the contract was substantially complete. The contracting officer's (CO's) final decisions state that as of February 27, 1987, contract—0043 was 100 percent complete, and as of August 31, 1986, contract—0073 was 100 percent complete.

On August 12, 1988, CYR submitted a letter that listed combined claims for work on both contracts, for a total of $450,410. Unrecovered overhead was claimed on both contracts, with separate amounts stated for each. A claim amounting to $32,436 for additional wages, based on the labor classification of employees installing reinforcing steel (Rebar) was included, without designation of the contract to which the claim applied.

The CO for both contracts was the same person. In letters dated November 30, 1989, the CO issued separate decisions on each contract. During the intervening period, resubmittals had clarified the amounts claimed for unrecovered overhead with respect to each contract. The claim for unrecovered overhead amounted to $307,196 for 471 days on contract—0043, and to $64,862 for 174 days on contract—0073. The November 30, 1989, letters each determined that the claim for unrecovered overhead on the relevant contract was without merit and the amount claimed was denied.

In both of the November 30, 1989, letters, the CO stated "the aspect of the claim regarding back wages is currently being negotiated with the Contractor." Neither letter included a CO decision on CYR's claim for additional wages paid to reinforcing steel (Rebar) installers.

On November 30, 1990, plaintiff filed a separate complaint with respect to each contract; docket No. 90–3977C contains five counts that apply to claims relative to contract—0043, and docket No. 90–3978C contains six counts that apply to claims relative to contract—0073. Count I in each docket is concerned with the claims for unrecovered overhead. Count III in docket No. 90–3978C is concerned with the claim for additional wages paid to Rebar installers.

On November 22, 1991, defendant filed separate motions for summary judgment relative to Count I in each docket, and a motion to dismiss for lack of subject matter jurisdiction as to Count III in docket No. 90–3978C. These motions came before the court for oral argument on November 4, 1992. At the close of argument, counsel were told that the motions for summary judgment as to Count I in each docket would be denied. With respect to Count III, in docket No. 90–3978C, counsel were told that defendant's motion to dismiss pursuant to RUSCC 12(b)(1), lack of subject matter jurisdiction, would be denied. The motion to dismiss Count III under RUSCC 12(b)(4), failure to state a claim upon which relief may be granted, would be converted to a motion for summary judgment, and, as so converted, on the basis of the materials in the motion papers, would be allowed. Rulings on these motions, and a schedule for further proceedings on the remaining matters in these dockets, were contained in a separate order filed November 5, 1992.

\* \* \* \* \* \*

Defendant's motion for partial summary judgment for unrecovered overhead costs in Count I of contract—0043, initially applied to five modifications that involved a total of 471 additional days. During the course of briefing, the claims relative to two modifications, each involving 30–day extensions, were withdrawn by plaintiff; the three remaining modifications involve extension periods that total 411 days.

Defendant's motion for partial summary judgment for unrecovered overhead costs in Count I of contract—0073 initially identified four modifications. The time extensions in these four modifications total 228 days. The claim relative to one modification, which involved a 43–day time extension, was withdrawn by plaintiff during the course of briefing. The time extensions allowed in the three remaining modifications total 185 days.[1]

---

1. Correlation of the time extensions in the modifications for contract—0073 to the 100 percent completion date is confused. The CO computed the original completion date as Mar. 10, 1986, and the extension to 100 percent completion on Aug. 31, 1986, as 174 days. This total is re-

Each of the bilateral contract modifications relative to the claims for unrecovered overhead costs contains the standard provision used in Army Corps of Engineer contracts for modifications under the Changes clause. Defendant asserts the doctrine of accord and satisfaction operates to bar plaintiff's impact delay claim for unrecovered overhead during the time extensions agreed upon in the modifications. CYR asserts that the standard release language is ambiguous, and that the modifications in dispute involved only time and money costs applicable to the changed work. According to CYR, there was no accord and satisfaction as to delays incident to unchanged work, and that the CO had agreed orally that CYR subsequently could submit claims for unrecovered overhead. CYR also contends that the delays it encountered were not due to the changed work, but, instead, were due to the CO's failure to close the contracts at the times they were substantially complete: November 27, 1985, for contract—0043 and April 4, 1986, for contract—0073. Allegedly, the CO refused to accept the work in order to keep the job open solely for Government purposes. CYR contends contract—0043 was improperly held open 411 days, and contract—0073 was improperly held open an additional 131 days.

Defendant is a movant for summary judgment under RUSCC 56. Summary judgment is appropriate where there is a showing that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. A movant for summary judgment has the burden of showing the absence of genuine issues as to any material facts. *Adickes v. Kress*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). The movant's burden may be discharged by showing that there is an absence of evidence to support the nonmovant party's case. A complete failure of proof concerning an essential element of the nonmoving party's case entitles the moving party to judgment as a

matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed.Cir.1987). Doubts concerning factual issues are to be resolved in the favor of the nonmovant. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962).

The scope and content of the doctrine of accord and satisfaction was examined in detail by the Court of Claims in *Chesapeake & Potomac Tel. Co. v. United States*, 654 F.2d 711, 228 Ct.Cl. 101 (1981) (acceptance and cashing of check tendered as "complete" payment not an accord and satisfaction), and in *Emerson–Sack–Warner Corp. v. United States*, 416 F.2d 1335, 189 Ct.Cl. 264 (1969) (ASBCA erred as a matter of law in finding an accord and satisfaction on facts that did not show a mutual agreement for settlement of a bona fide dispute).

Accord and satisfaction refers to a method to discharge and terminate existing rights. It provides a perfect defense in an action for enforcement of a previous claim, whether that claim was well founded or not. An accord is an agreement by one party to give or perform and by the other party to accept, in settlement or satisfaction of any existing or matured claim, something other than that which is claimed to be due. The process of making an accord is the same as in the case of other contracts.

The following elements are essential to an accord and satisfaction: (1) proper subject matter; (2) competent parties; (3) resolution of a bona fide dispute between the parties; (4) meeting of the minds of the parties; and (5) consideration.

Plaintiff's fixed price contract contained the standard required clauses in Army Engineer construction contracts for work inside the United States, including Changes (FAR 52.243-4), and Suspension of Work

flected in Count I of contract—0073. Deduction of the 43–day time extension withdrawn by plaintiff results in a final claim of 131 days for Count I of contract—0073. In the motion pa-

pers, the parties agree that plaintiff's claims for unrecovered overhead on contract—0073 is for 131 days.

(FAR 52.212–12). The Changes clause authorizes an equitable adjustment for changes that cause an increase or decrease in the cost of or the time required for work under the contract, "whether or not changed by any such order." FAR 52.243–4, subsection (d). The Suspension of Work clause does not authorize an equitable adjustment for any delay "for which an equitable adjustment is provided for or excluded under any other term or condition of this contract." FAR 52.212–12, subsection (b).

The three modifications remaining in contract—0043 that involve time extensions are P–00018, P–00020 and P–00022. Summaries of these modifications follow:

P–00018, Water Jacket Heaters/Electric Gate Opener, increased the contract price in the amount of $2,676 and increased the period of contract performance by 69 days. The CO request for proposal for the change is dated October 21, 1985; the contractor's proposals are dated October 23, November 22, and December 9, 1985; negotiations were held December 13, 1985. None of these communications are in the record, nor does the record include minutes or summaries of the negotiations. P–00018 was signed by the CO on January 7, 1986, and by plaintiff on January 13, 1986.

P–00020, Rapid Removal Barrier/MSCF Tower and Lost Concrete, increased the contract price in the amount of $1,800 and increased the period of performance by 149 days. The CO request for proposal for the change is dated February 14, 1986; plaintiff's proposals are dated August 7, 1985, and March 28, 1986; negotiations were held on March 28, 1986. None of these communications, nor any minutes or summaries of negotiations, are in the record. P–00020 was signed by the CO on May 1, 1986, and by plaintiff on May 29, 1986.

P–00022, Additional Gates, increased the contract price in the amount of $13,-313 and increased the period of contract performance by 193 days. The CO request for proposal for the change is dated October 3, 1986; plaintiff's proposal is dated October 22, 1986; negotiations were held on November 3, 1986. None of these communications, nor any minutes or summaries of negotiations, are in the record. P–00022 was signed by the CO on November 4, 1986, and by plaintiff on November 7, 1986.

The three remaining modifications on contract—0073 that involve time extensions are P–00010, P–00011 and P–00013. A summary of these modifications follows:

P–00010, Vapor Barrier/Tunnel Leakage, resulted in an increase in the contract price in the amount of $7,951. The contract period of performance was increased by 54 calendar days for work on the repair of the area where a leakage occurred between the southeast wall of the existing mechanical room and the rapid deployment tunnel adjoining it. The CO request for proposal for the change is dated October 13, 1985. The record does not contain this request, plaintiff's response, nor minutes or summaries of relevant negotiations. The CO signed P–00010 on February 10, 1986; plaintiff signed on March 28, 1986.

P–00011, Dump Circuitry, Heater/Lights/Vent, and AWF Prep., resulted in an increase in the contract price in the amount of $19,500. The work involved provided: (A) an electrical alternator and associated circuitry for the hot water circulating pumps P1 and P1S in the visitation Center, (B) unit heaters, lighting and ventilation, various locations, and (C) wall surface preparations for acoustical wall fabric. The contract period of performance was extended 60 calendar days. Information concerning the date of the CO request for proposal, the request, plaintiff's response to the request; the date of negotiations; and minutes or summaries of relevant negotiations are not in the record. P–00011 was signed by the CO on April 10, 1986, and by plaintiff on April 10, 1986.

P–00013, Relocate PA Control and Humidifier Electrical, resulted in an increase in the contract price in the amount of $13,940. The work involved provided for the relocation of PA Control System and for electrical service for humidifier.

The contract period of performance was increased by 71 calendar days. The CO request for proposal for the change is dated May 7, 1986. The record does not contain this request, plaintiff's response, nor minutes or summaries of relevant negotiations. P–00013 was signed by the CO on July 22, 1986, and by plaintiff on August 6, 1986.

■ Each of the modifications, in contract—0043 and contract—0073 contained the following provision:

It is further understood and agreed that this adjustment constitutes compensation in full on behalf of the contractor and his subcontractors and suppliers for all costs and markup directly or indirectly attributable to the change order, for all delays related thereto, and for performance of the change within the time frame stated.

■ Defendant contends that this provision, in the absence of an express reservation, precludes any claim for impact delay costs in unchanged work. Defendant reads too much into the release language. The quoted language is a standard provision recommended for use in modifications under the Changes clause. It is a recital of the Changes clause language that brings delays in unchanged work within the scope of equitable adjustments authorized. *See Appeal of Gallup Constr. Co.*, 72–2 B.C.A. (CCH) ¶ 9,522, 1972 WL 1877 (AGBCA 1972). The standard provision may be used relative to direct and indirect costs that apply only to changed work, or, if the contracting officer and the contractor have so negotiated, it can be used to include delay or standby costs in the unchanged work. *See Appeal of Quaker Elevator Co.*, 78–1 B.C.A. (CCH) ¶ 12,965, 1978 WL 1812 (PSBCA 1978).

■ Modifications to adjust for changes during the course of performance are not independent agreements to be construed in isolation. Modifications made in the context of on-going contract administration, unless a broader scope is made explicit, relate to changed work only. Agreement as to the costs for the changed work itself, in the absence of express negotiations, does not establish an accord and satisfaction for resulting impact delays on unchanged work.

■ The meaning of the terms in the modification, and the effect of the modification on the overall contract obligations of the parties, should be considered in the context of the entire contract. All circumstances surrounding the negotiations held prior to the execution of the modifications need to be examined.

■ Modification agreements generally are not considered to be independently conclusive evidence that the parties intended that the agreement include impact costs. Even strong evidence in the modification agreement that it constitutes the entire adjustment due the contractor ordinarily is not considered to be independently dispositive. *NRM Corp. v. Hercules, Inc.*, 758 F.2d 676, 682–83 (D.C.Cir.1985).

Plaintiff points out that the additional work after substantial completion of contract—0043 was about 1 percent of the contract amount, but was used by the CO to keep the contract open for 411 days. P–00020 for example involved $1,800 worth of work, but an extension of 149 days. Similarly, in contract—0073, on July 22, 1986, P–00013 involved a 71–day extension on minimal work valued at $13,940.

The text of the release deals with all costs and markup "directly or indirectly attributable to the change order." Plaintiff construes this language as applicable only to delays incident to the changed work and contends that such was what the parties intended. Defendant construes this language to include all delays incident to both changed and unchanged work.

■ Plaintiff's construction of the scope of the phrase "for all delays related thereto" in the Army Engineers' standard provision in the modifications is reasonable. When the same language may be cited as reasonable support for each party's contentions, the contract is ambiguous.

■ A naked recital of Changes clause coverage in the standard provision, as relied upon by defendant, is not sufficient to establish an accord and satisfaction of both

claims for the changed work and claims for impact on unchanged work. There must be a showing of the elements essential to an accord and satisfaction. This can most readily be accomplished by express language in the modification agreement that without ambiguity establishes a meeting of the minds. In the absence of express language in the modification agreement itself, the elements may be established by other records, affidavits or testimony. When the facts are appropriate for such a showing, an accord and satisfaction may be established in summary judgment procedures. *See King Fisher Marine Serv. Inc. v. United States*, 16 Cl.Ct. 231, 236 (1989); *Spirit Leveling Contractors v. United States*, 19 Cl.Ct. 84, 92 (1989).

▐ To obtain summary judgment on an accord and satisfaction, the motion papers must include information sufficient to define the subject matter and the scope of the negotiations for the contract modification. Such a showing was not made in defendant's motion papers. There is no showing of what plaintiff was requested to negotiate as to time and cost, in the various modifications, plaintiff's responses and the content of relevant negotiations.

In this case, the materials in the record are not adequate to show the intent of the parties or a meeting of minds on disputed matters. The content of negotiations on the modifications is in dispute. Defendant has not established the absence of a genuine issue of material fact, or that there is an absence of evidence to support the non-movant's case. Accordingly, defendant's motion for partial summary judgment as to Count I in these dockets must be denied.

\* \* \* \* \* \*

Count III of contract—0073 is a claim for $32,436 that is based on the difference between the wage rate for personnel classified as Carpenters ($6.48 per hour) and the wage rate for personnel classified as Iron-workers ($15.64 per hour). The work under contract—0073 required the installation of reinforcing steel (Rebar) in concrete foundations and foundation walls. CYR had made its bid based on the local practice of classifying Rebar installers as carpenters. Plaintiff contends the CO arbitrarily directed that Rebar installers were to be paid at the ironworker rates, that such direction was erroneous, and that it constituted a constructive change in the contract. Defendant moved to dismiss Count III on the ground that this court lacks subject matter jurisdiction because at the time plaintiff submitted its claim to the CO on August 12, 1988, no dispute existed over the amount of money requested.

The complaint in Count III seeks relief based upon an express contract made by the Army Engineers. The General Provisions included standard clauses relative to Labor Standards (20 and 30); Disputes (6); and Disputes concerning Labor Standards (38).

▐ Dismissal of a claim under the Tucker Act and the Contract Disputes Act on the basis of the pleadings precludes consideration of supporting evidence on substantive merits. The procedure is drastic and should be used only when clearly appropriate. The procedure for rendering a final dismissal for want of jurisdiction should be used sparingly. *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

▐ Factual inquiry on a motion to dismiss under RUSCC 12(b) is limited. In passing on a motion to dismiss, whether on the ground of lack of subject matter jurisdiction or for failure to state a cause of action, the allegations in the complaint are to be considered favorably to the pleader. The issue is not whether the plaintiff ultimately will prevail; it is whether the plaintiff is entitled to offer evidence to support facts alleged in the complaint. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *see also Aleut Community of St. Paul Island v. United States*, 480 F.2d 831, 838, 202 Ct.Cl. 182 (1973).

"Subject-matter jurisdiction of the federal courts is initially determined according to the well-pleaded complaint." *Allied–General Nuclear Serv. v. United States*, 839 F.2d 1572 (Fed.Cir.), *cert. denied*, 488 U.S. 819, 109 S.Ct. 61, 102 L.Ed.2d 39

(1988) (citing *Gronholz v. Sears, Roebuck, & Co.*, 836 F.2d 515 (Fed.Cir.1987)). In this case, plaintiff alleges a contract claim under the Tucker Act and the Contract Disputes Act.

■■■■ Subject matter jurisdiction relates to the court's general powers to adjudicate in specific areas of substantive law. The subject matter of a dispute between the parties on the facts peculiar to a specific claim under the Tucker Act and the Contract Disputes Act may implicate the consent of the sovereign to be sued, but such jurisdictional concepts do not limit the subject matter jurisdiction of the court.

■■ For purposes of dismissal on the pleadings under RUSCC 12(b)(1), the complaint states a claim within the subject matter jurisdiction of this court. 28 U.S.C. § 1491(a)(1) (1988); 41 U.S.C. § 609(a)(1) (1988); *Scheuer v. Rhodes*, 416 U.S. at 236, 94 S.Ct. at 1686; *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773; *Mindes v. Seaman*, 453 F.2d 197, 198 (5th Cir.1971); *Bray v. United States*, 785 F.2d 989, 992 (Fed.Cir.1986); *Merck & Co. v. United States*, 24 Cl.Ct. 73, 77–79 (1991). Accordingly, defendant's motion to dismiss on the pleadings for lack of subject matter jurisdiction must be denied.

In this case, it is appropriate to consider defendant's motion to dismiss as a motion under RUSCC 12(b)(4), failure to state a claim on which relief can be granted. Defendant's motion papers included: wage classifications and rates in Wage Decision No. 83–ME–396 by the Labor Department; a request by CYR, dated January 15, 1985, on DD Form 1565 (Request for Authorization of Additional Classification and Rate) for a classification: Ironworkers–Reinforcing Steel for Concrete; and a letter dated June 28, 1985, from the District Labor Advisor advising that the employees should be paid as carpenters and that no action was required on the DD Form 1565 request. These materials clearly are materials outside the pleadings, and they may not be excluded by the court on the basis of lack of relevancy or procedural error. Accordingly, defendant's motion is treated and disposed of as one for summary judgment.

The Contract Disputes Act requires that all claims by a contractor against the Government "shall be in writing." 41 U.S.C. § 605(a). The Federal Acquisition Regulations (FAR) which implement the CDA, define "claim" as

> a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, ... A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim.

48 C.F.R. § 33.201 (1990).

■■ The Federal Circuit has defined the content of a "claim" in *Dawco Constr. Inc. v. United States*, 930 F.2d 872, 877 (Fed.Cir.1991). No claim exists unless it involves a dispute. When a request for payment is submitted, a contractor and the government contracting agency must already be in dispute over the amount requested. Unilateral cost proposals or correspondence suggesting disagreement during negotiations, while they may ultimately lead to a dispute, do not, for purposes of the Act, satisfy the clear requirement that the request be in dispute.

■■ There are four requirements which must be met before a submission is deemed to be a claim under the CDA: (1) the demand or assertion must be in writing; (2) the writing must assert specific rights; (3) the writing must set forth a sum certain; and (4) the contractor and the government must already be in dispute at the time of the submission. *Dawco Constr. Inc. v. United States*, 930 F.2d at 878; *Essex Electro Eng'rs Inc. v. United States*, 960 F.2d 1576, 1580 (Fed.Cir.1992).

■■ Plaintiff alleges that the CO ordered the work done at the higher rate. When the classification issue finally was resolved in June 1985 by the District Labor Advisor, plaintiff alleges that it orally requested the CO to redress it for the overpayment and that this request was denied.

The facts on Count III do not support plaintiff's argument. At the time plaintiff submitted its claim on August 12, 1988, relative to wages paid Rebar installers,

there is nothing to show that a dispute existed as to the amount requested. Prior to the August 12, 1988, letter, plaintiff had not submitted any voucher, request for payment, or any other correspondence that would indicate a request for payment of the additional wages it now claims, or the existence of a dispute between the parties on such a request.

There is no documentation that plaintiff ever negotiated with the CO for redress. There also is no documentation that plaintiff sought any payment during the 6 months from January to June. The problem is that there is no evidence that any type of negotiations occurred. It appears that after the government resolved the wage classification issue, plaintiff made no attempt to seek redress until the August 12, 1988, letter.

Plaintiff's allegations of an oral request and rejection fail to satisfy *Dawco's* standard. The essence of the *Dawco* decision is that the parties reached an impasse after pursuing some type of negotiations. The *Dawco* court refused to find a dispute where the correspondence between the parties .was not final, but rather left open negotiation possibilities.

In the instant case, it is is unclear whether the parties ever attempted to negotiate. While it is true that the FAR does not explicitly require the dispute itself to be in writing, *Dawco* indicates that a party must show some proof that a dispute existed. In the normal course of contract administration, contractors routinely make some sort of a paper record that a dispute exists. If allegations of oral disputes were all that were necessary to satisfy the required dispute element, then *Dawco's* focus on the surrounding circumstances to show a dispute did in fact exist serves little relevance.

In a *motion for* summary judgment, the movant's burden may be discharged by showing that there is an absence of evidence to support the nonmovant party's case. *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552. On the facts of this case, the motion papers are adequate to make such a showing. Accordingly, defendant is entitled to summary judgment on the contract claim in Count III of docket No. 90–3978C.

In its motion on Count III, defendant alternatively asserts that the claim for additional wages for Rebar installers arises out of the labor standards provisions of the contract and for that reason is not within the court's jurisdiction. Defendant cites *Emerald Maintenance Inc. v. United States,* 925 F.2d 1425 (Fed.Cir.1991). Inasmuch as defendant prevails on the contract issue, disposition of the alternative labor standards argument is unnecessary. It is noted, however, that plaintiff's claim in Count III does not *arise out of* the labor standards provision, or *out of* any ruling by the Labor Department. On the facts, *Emerald Maintenance* is distinguishable.

The foregoing analysis was the basis for the order entered November 5, 1992. Defendant's motions for summary judgment on Count I in docket No. 90–3877C and Count I in docket No. 90–3978C were denied. Defendant's motion to dismiss Count III in docket No. 90–3978C, for lack of subject matter jurisdiction was denied. Defendant's motion, treated as a motion for summary judgment, was allowed as to Count III of docket No. 90–3978C.