**LINDA NEWMAN CONSTRUCTION CO., et al., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 00–317 C.

United States Court of Federal Claims.

Nov. 13, 2000.

Michael D. Sechrest, Gainesville, FL, for plaintiff. Peter A. Robertson, Gainesville, FL, of counsel.

Bryant S. Banes, with whom were David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, Deborah A. Bynum, Assistant Director, Civil Division, United States Department of Justice, Washington, DC, for defendant. Millicent Gompertz, United States Department of Veterans Affairs, Washington, DC, of counsel.

## OPINION AND ORDER

HEWITT, Judge.

This is a suit by a government contractor for an equitable adjustment for costs arising out of changes to a contract for the construction of an addition to a Veterans Administration (VA) hospital. Plaintiff contends that a reservation clause in the change order entitles plaintiff to additional compensation for the costs associated with the delay in the completion of the contract. Defendant argues that the adjustment plaintiff requests is for additional overhead costs, and that another clause in the change order, read together with the original contract, precludes compensation for the additional overhead costs sought. The action is before this court on Defendant's Motion for Summary Judgment (Def.'s Mot.). Because plaintiff has not shown that the reservation clause can fairly be interpreted as covering the delay costs that it seeks, Defendant's Motion is GRANTED.

## I. Background

Unless otherwise noted, the following facts are taken from plaintiff's Complaint.

Plaintiff entered into a contract with the VA on July 1, 1996, for the construction of the Ambulatory Care Addition to the Veterans Affairs Medical Center in Gainesville, Florida. The VA agreed to pay plaintiff $19,858,000.00 for its work. Over the course of construction, the VA issued 244 change orders, nineteen of which extended the completion date of the contract by a total of 199 days;[1] pursuant to each of those nineteen orders, the parties executed Field Supplemental Agreements (FSAs), which modified the original contract. DPFUF ¶ 3.[2] Each FSA calculated the direct cost of the change and provided that plaintiff was entitled to compensation for overhead for up to ten percent of the direct cost of the change, along with a ten percent profit. Id. ¶ 4. Each FSA also reserved to plaintiff the right to seek an equitable adjustment for costs arising from the impact of the change orders on unchanged work. Id. ¶ 5.

---

1. Counsel for plaintiff represented at oral argument that the project was actually extended 211 days by the changes. Transcript of October 6, 2000 Oral Argument (Tr.) at 44. The Complaint states, however, that the delay due to the change orders was 199 days. Complaint ¶ 10. Moreover, the adjustment that plaintiff requested appears to be based on an assessment that the total delay was 199 days. Appendix to Defendant's Proposed Findings of Uncontroverted Fact (DPFUF App.) at 60. In any event, the conflicts in the record are not material to the court's resolution of plaintiff's claim.

2. Except as noted in n. 1 above, the facts taken from Defendant's Proposed Findings of Uncontroverted Fact are not disputed by plaintiff.

The contract was completed in October 1999. Plaintiff sought an equitable adjustment in the amount of $321,156.77 by a claim dated December 6, 1999. DPFUF App. at 57–58. The claim encompassed certain costs claimed to have been incurred by plaintiff and by its subcontractors as a result of the change orders. Appendix to Defendant's Proposed Findings of Uncontroverted Fact (DPFUF App.) at 57–58. The VA rejected plaintiff's claim on April 25, 2000, on grounds that the claimed expenses were overhead costs and were therefore already included in the price of the contract change. DPFUF ¶ 7. Plaintiff brought suit in this court under the Contract Disputes Act, 41 U.S.C. § 609(a)(3), on May 30, 2000, claiming $321,156.77 in damages.

## II. Summary Judgment

Summary judgment is appropriate when "there is no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law." Rule of the Court of Federal Claims (RCFC) 56(c); *Southfork Sys., Inc. v. United States*, 141 F.3d 1124, 1131 (Fed.Cir.1998). A fact that may affect the outcome of the suit is material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must construe all facts in the light most favorable to the nonmovant. *Id.* at 255, 106 S.Ct. 2505. The movant bears the initial burden of showing that there is no genuine issue of material fact; if the movant satisfies that standard, the burden shifts to the nonmovant to show, for each issue on which it will bear the burden of proof at trial, that there is a "genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Contract interpretation is a question of law appropriately resolved on summary judgment. *Gov't Sys. Advisors, Inc. v. United States*, 847 F.2d 811, 812 (Fed.Cir.1988).

## III. Discussion

### A. Contract Interpretation

The contract between the parties was a firm-fixed-price contract as defined in the Federal Acquisition Regulations, since the cost of the contract was not subject to adjustment based on established prices, actual costs, or cost indexes. FAR § 16.203–1. A firm-fixed-price contract "places upon the contractor maximum risk and full responsibility for all costs and resulting profit or loss." *Id.* § 16.202–1. Plaintiff assumed the risk, in submitting a bid for and signing a firm-fixed-price contract, that it would be forced to bear costs that it would not be able to recover. *Id.* Accordingly, unless the parties explicitly agreed otherwise, plaintiff is not entitled to recover its costs arising from delay. *See, e.g., ITT Fed. Servs. Corp. v. Widnall*, 132 F.3d 1448, 1451 (Fed.Cir.1997); *Dalton v. Cessna Aircraft Co.*, 98 F.3d 1298, 1304 (Fed.Cir.1996). Whether the parties did, in fact, explicitly agree otherwise is the question before the court.

The dispute centers on the effect of a reservation clause in the change orders on the original contract's limitation on recovery of overhead resulting from change orders. The original contract contemplated possible changes; sections 1.47 and 1.48 set out the procedures governing change orders and specified the costs arising from change orders that the contractor may recover. DPFUF App. at 41–44. Section 1.48, which covered changes costing $500,000 or less,[3] provided for overhead recovery, defined as a percentage of the cost of the change, with the percentage declining as the cost of the change increased:

> Allowances not to exceed 10 percent each for overhead and profit for the party performing the work will be based on the value of labor, material and use of construction equipment required to accomplish the change. As the value of the change increases, a declining scale will be used in negotiating the percentage of overhead and profit. Allowable percentages on changes will not exceed the following: 10 percent overhead and 10 percent profit on the first $20,000; 7–1/2 percent overhead and 7–1/2 percent profit on the next $30,-

---

**3.** Section 1.47 covered changes costing in excess of $500,000. DPFUF App. at 41–42. All of the costs in dispute in this case relate to changes costing $500,000 or less. DPFUF ¶ 3.

000; 5 percent overhead and 5 percent profit on balance over $50,000.

DPFUF ¶ 2; DPFUF App. at 43. The reservation clause in dispute here both incorporates the overhead recovery limitation in the original contract and reserves to plaintiff the right to seek compensation for "impact" costs, as follows:

> This change represents full and complete compensation for all direct costs and time required to perform the work set forth herein, plus the overhead and profit as provided for in the Changes clause in this contract. The contractor hereby reserves its right to submit a request for equitable adjustment for all costs resulting from the impact of this change on unchanged contract work.

Affidavit of David Gotwalt (Gotwalt Aff.) ¶ 6 (accompanying Plaintiff's Response and Brief in Opposition to Defendant's Motion for Summary Judgment (Pl.'s Response)); DPFUF App. at 47.[4] Plaintiff contends that the reservation clause modified the original contract's limitation by permitting plaintiff to seek overhead costs relating to the impact of changes on unchanged work. Pl.'s Response at 8–9. That modification, plaintiff argues, is contained in the words "all costs resulting from the impact of this change on unchanged work." Pl.'s Response at 9; Appendix to Plaintiff's Proposed Findings of Uncontroverted Fact (PPFUF App.) at 47. Defendant argues that the reservation did not affect the limitation. Def.'s Mot. at 13. In effect, plaintiff asks this court to read the language permitting plaintiff to seek an equitable adjustment for "all costs resulting from the impact" of the change orders "on unchanged contract work" as overriding the contract's limitations on recovery of overhead costs insofar as the overhead costs relate to unchanged work. Pl.'s Response at 8. Defendant disputes this reading and contends that the reservation clause permitted plaintiff to seek only the costs arising directly from the impact of a change order on unchanged work. Def.'s Mot. at 13.

■ The text of a contract is the starting point in interpretation. *Foley Co. v. United States*, 11 F.3d 1032, 1034 (Fed.Cir.1993). In construing a contract, the words are to be given "their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning." *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir.1998). Here, the text of the reservation clause itself supports defendant's interpretation. The first sentence states that the sum set forth in the change order constitutes "full and complete compensation" both for direct costs and for "overhead and profit as provided in the Changes clause of this contract," while the second sentence reserves to plaintiff the right to seek reimbursement for "all costs resulting from the impact of this change on unchanged work." PPFUF App. at 47. The Changes clause includes the restrictions on recovery of overhead. DPFUF App. at 43. The court cannot discern what "full and complete compensation for overhead and profit" could mean other than full and complete compensation for overhead and profit. Plaintiff's argument would require the court to find that the reservation clause relied on the Changes clause in one sentence and ignored it in the next. Moreover, the requirement in the reservation language that the costs "result" from the change suggests that the parties anticipated a direct causal relationship between the change order and the equitable adjustment, which plaintiff has not shown here.

■ The interpretation that plaintiff urges effectively reads the limitation on overhead costs, and the contract modification's incorporation of that limitation, out of the original contract. Contract interpretations that make parts of the contract "useless, inexplicable, inoperative, void, insignificant, meaningless, [or] superfluous" are disfavored. *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir.1991). Defendant's interpretation, by contrast, ascribes a reasonable meaning to the phrase "costs resulting from the impact on unchanged work" on which plaintiff relies, namely, that it permits an equitable adjustment for direct costs with respect to the unchanged work. Transcript of Oral Argu-

---

**4.** The language quoted in Mr. Gotwalt's affidavit differs from the actual contract reservation clause in minor respects not material to the resolution of this case. *See* n. 5 below.

ment (Tr.) at 24. In this respect, also, defendant's interpretation is preferable.

■ Absent a persuasive reason for making the distinction that plaintiff suggests in the treatment of the Changes clause in two adjacent sentences of the reservation language, the more plausible reading of the contract, and the one consistent with settled principles of contract interpretation, is that the Changes clause covers all overhead costs, and that the "impact on unchanged work" refers to direct costs, such as labor and materials, that are attributable to some impact of the change in the work on an unchanged portion of the work.

In addition to its argument based on the language of the contract, plaintiff urges that its interpretation of the FSAs is supported by extrinsic evidence, case law and the doctrine of estoppel. The court now examines each of those arguments.

### B. Extrinsic Evidence

■ It is true, as plaintiff argues, that evidence extrinsic to the contract itself may also be relevant in contract interpretation. *Gen. Dynamics Corp. v. United States,* 47 Fed.Cl. 514, 547 (2000). Contemporaneous statements construing a contract, made before the dispute arose, are entitled to great weight. *Blinderman Constr. Co. v. United States,* 695 F.2d 552, 558 (Fed.Cir.1982); *Arizona v. United States,* 216 Ct.Cl. 221, 575 F.2d 855, 863 (1978); *Petrofsky v. United States,* 203 Ct.Cl. 347, 488 F.2d 1394, 1402 (1973). If the parties indicate during negotiations their intent regarding the proper meaning of a contract term, that manifestation of intent may be persuasive evidence for purposes of contract interpretation. *David Nassif Assocs. v. United States,* 214 Ct.Cl. 407, 557 F.2d 249, 257 (1977); *see also E.I. Du Pont De Nemours & Co. v. United States,* 24 Cl.Ct. 635, 639 (1991), (government bound by contractor's interpretation of contract term when government was aware of that interpretation at the time of execution),

*aff'd,* 980 F.2d 1440 (Fed.Cir.1992). The court looks at the evidence to discern the intent of the parties at the time of contract formation. *Harris,* 142 F.3d at 1467. The effect of a contract modification "should be considered in the context of the entire contract," and "[a]ll circumstances surrounding the negotiations held prior to the execution of the modifications need to be examined." *CYR Constr. Co. v. United States,* 27 Fed.Cl. 153, 159 (1992).

In this case, however, the uncontradicted evidence on the formation of the modifications to the contract, evidence supplied by plaintiff, supports defendant's interpretation of the contract's meaning. After work on the contract had begun, the parties discussed the possibility of plaintiff's reserving the right to seek a separate adjustment. Gotwalt Aff. ¶ 6. Phillipa Anderson, the VA's Assistant General Counsel, accordingly sent a proposed reservation clause to plaintiff on May 21, 1997. PPFUF App. at 78. The clause, nearly identical to the one ultimately incorporated in the change orders, read as follows:

> This change represents full and complete compensation for all direct costs and time required to perform the work set forth herein, plus the overhead and profit as provided for in the Changes clause of this contract. The contractor hereby reserves its right to submit its request for equitable adjustment for all costs resulting from the impact of this change on unchanged contract work.[5]

*Id.* On June 6, 1997, plaintiff responded, suggesting an alternate version of the reservation clause, which read as follows:

> This change represents full and complete compensation for all direct costs and time required to perform the work set forth herein, plus the overhead and profit as provided for in the Changes clause of this Contract. The Contractor hereby reserves its right to seek compensation for extended general conditions based upon the number of days this change impacted the critical

---

5. There are minor textual differences between the language submitted by Ms. Anderson and the contract documents. *Compare* PPFUF App. at 78 *with id.* at 47 ("this contract" in Ms. Anderson's version vs. "the contract" in the contract docu-

ments, and "its right" in Ms. Anderson's version vs. "the right" in the contract documents). The differences appear to the court to be immaterial to the resolution of the case and have not been argued or relied on in any way by the parties.

path schedule. The extended general conditions rate will be the daily rate agreed upon between the Owner and Contractor. *Id.* at 80. On August 27, 1997, VA Senior Resident Engineer Michael J. Spann rejected plaintiff's proposed reservation clause and requested that plaintiff incorporate the version of the clause that the VA had originally proposed. PPFUF App. at 81. Plaintiff then agreed to incorporate the language requested by Mr. Spann. Gotwalt Aff. ¶ 8. Defendant's version of the reservation clause was incorporated into all the FSAs that are at issue here. *Id.*

Defendant rejected a version of the clause that, in plain terms, would have guaranteed plaintiff the right to seek delay overhead costs. Defendant requested, through Mr. Spann, that plaintiff instead incorporate defendant's standard reservation language, which included the phrase "all costs resulting from the impact of this change on unchanged work," into the contract modifications. That plaintiff's claim is for delay overhead costs is illustrated by its own computation of those costs, since plaintiff multiplied the number of days of delay by its variable daily expense rates. DPFUF App. at 60. That approach to calculating costs precisely matches the formula set forth in the reservation clause that Mr. Spann rejected.[6] In these circumstances, to interpret "impact on unchanged work" as encompassing delay overhead would render meaningless the parties' negotiations.

Moreover, while plaintiff claimed in its letter of December 6, 1999, that it computed the costs of the impact of the changes on unchanged work (pursuant to Mr. Spann's insistence), in fact the computation followed the approach contained in the reservation language that the VA, through Mr. Spann, had rejected. PPFUF App. at 57. Indeed, in the rejected clause, plaintiff referred to the costs it wanted to recover as "extended general conditions." PPFUF App. at 81. When Mr. Spann rejected that request and requested that plaintiff revise the clause, he referred specifically to the limitation on overhead as conflicting with plaintiff's request, as follows:

> The proposed reservation language submitted has been reviewed. The second sentence of the reservation language states that the Contractor reserves its right to seek compensation for extended general conditions based upon the number of days the change impacts the critical path schedule. Per Specification Paragraph 01001–1.47, Changes, overhead is limited to a maximum of 10% and is applied on a declining scale as the value of the change increases. If a change impacts the critical path of the project, extending time for completion, the overhead is still limited to the percentages specified in Specification Paragraph 01001–1.47.

PPFUF App. at 81. Mr. Spann could hardly have been more clear: the VA's policy is to limit "extended general conditions" costs, which are included within overhead, and reservation language inconsistent with that limitation is unacceptable.[7] In support of his position, Mr. Spann also referred to the decisions by the United States Claims Court and the Court of Appeals for the Federal Circuit in *Reliance*, and attached copies of those opinions to his letter. *Id.* at 81–99. Plaintiff's interpretation of the term "impact on unchanged work" as including delay overhead assumes that the VA, through Mr. Spann, rejected one version of the clause solely be-

---

6. Ted McCary, Project Manager for plaintiff, stated in an affidavit that "[t]he request for equitable adjustment submitted by NEWMAN–CAMP on December 6, 1999, did not include direct costs of changed work." Affidavit of Ted McCary (McCary Aff.) ¶ 6 (accompanying Pl.'s Response). While this is clearly true, the recovery requested in the equitable adjustment did not appear to include direct costs of unchanged work either; rather, the costs requested were overhead costs. DPFUF App. at 60–64.

7. "General conditions" is a term that has often been construed as encompassing overhead costs. *See, e.g., Reliance Ins. Co. v. United States*, 20

Cl.Ct. 715, 718 n. 2 (1990) (equating "extended general conditions" with "extended field office overhead"), *aff'd*, 931 F.2d 863 (Fed.Cir.1991); *Clark Concrete Contractors, Inc. v. Gen. Servs. Admin.*, 1999 WL 143977, 1999 GSBCA LEXIS 61 at *84 (GSBCA Mar. 15, 1999) (classifying "general conditions" as "job site overhead costs"). Moreover, the contract between the parties defined overhead as including items such as insurance, office equipment and supplies, temporary toilets, and telephones. DPFUF ¶ 2. Plaintiff's breakdown of the costs that constitute its claim includes the same costs DPFUF App. at 61.

cause it permitted plaintiff to recover overhead, but agreed to another version having the same effect. The court finds that interpretation unreasonable.

That overhead costs are not properly included within impact costs is illustrated by several decisions of the Veterans Administration Board of Contract Appeals (VABCA). For example, in *Jack Cooper Constr. Co.*, 1984 WL 13731, 1984 VABCA LEXIS 61 (VABCA Oct. 18, 1984), the VABCA recognized a distinction between overhead costs and costs resulting from the impact of change orders on unchanged work, but it held that the contractor had not demonstrated that it was seeking the latter rather than the former. *Id.* at LEXIS *17–18. The board dismissed the contractor's argument as "an effort to circumvent the contractually specified flat percentage overhead rate," and found that the contractor had already been compensated for the delay. *Id.* at LEXIS *18. The VABCA also distinguished cases in which the change was clearly not intended to encompass the costs at issue because the costs were "beyond those incidental to the changes themselves." *Id.* at LEXIS *17 (VABCA Nov. 22, 1991). For example, in *P.J. Dick Contracting, Inc.*, 1991 WL 258350, 1991 VABCA LEXIS 31, the board distinguished *Jack Cooper*, and denied summary judgment to the government, on the grounds that the contractor had specifically identified costs that did not arise from delay in the performance of the changed work. *Id.* at LEXIS *15. The question in *Jack Cooper* and *P.J. Dick* turned on whether the parties could reasonably be construed as settling the contractor's compensation for the costs at issue; in *P.J. Dick*, the reservation language referred specifically to "extended overhead" as a cost not included in the change order that the contractor was entitled to claim later. *Id.* at LEXIS *6–7.

Plaintiff seeks to distinguish *Jack Cooper* on grounds that the contractor in that case made a unilateral reservation of rights after the end of the job, meaning that the change did not affect unchanged work and the contracting officer did not agree to the reservation. Tr. at 48–49. Plaintiff mischaracterizes that case: the work was not completed when the contractor informed the contracting officer that it intended to seek a time extension. *Jack Cooper*, 1984 VABCA LEXIS 61, at *5. Moreover, the VABCA did not state that the reservation was ineffective or that it was denying the contractor's claim on that basis; rather, it held that the contractor had not shown that the costs it sought were actually impact costs. *Id.* at *18. Plaintiff also seeks to distinguish *Santa Fe Eng'rs., Inc. v. United States*, 801 F.2d 379 (Fed.Cir. 1986), on the same basis and encounters the same problem: the *Santa Fe* court did not cite the unilateral nature of the reservation as a factor in its decision. Tr. at 49; 801 F.2d at 381–83.

The VABCA's decisions illustrate the circumstances under which a contractor may characterize its costs as "impact costs" beyond the scope of a change order. Specifically, when the price adjustment (with its percentage allowance for overhead) in a change order clearly does not encompass a given cost, either because the parties refer to it in a reservation clause or because the cost arises from factors too remote to be considered part of the change order, the contractor may claim that cost. Ms. Anderson's letter to plaintiff, which noted that "in many cases the impact of the change can be determined at the time the supplemental agreement is negotiated," and that reservation of rights be negotiated for each change, implied that those costs that cannot be so determined are outside the scope of the change order. PPFUF App. at 78. But plaintiff here has neither shown that the "general conditions" it requests were clearly within the scope of the reservation clause nor that the parties could not have foreseen that such costs would arise: the clause incorporates the original contract's limitation on overhead, and it was not only foreseeable but inevitable that plaintiff would incur delay costs as a result of the change orders, since the change orders themselves contemplated delays. *See, e.g.*, PPFUF App. at 45. As the VABCA said in *Jack Cooper*, to permit plaintiff to recover costs without showing that the costs did, in fact, result from the impact of the change orders on unchanged work would eviscerate the contract's limitations on overhead costs. 1984 VABCA LEXIS 61 at *18.

The extrinsic evidence of the parties' intent supports defendant's contention that plaintiff did not reserve the right to seek an equitable adjustment for delay overhead costs.

### C. Case Law

Both parties argue that relevant case law supports their respective positions on contract interpretation. Plaintiff relies particularly on *CYR*, cited above, for the proposition that contract modifications only limit recovery for the impact of a change order on changed work, absent an explicit statement to the contrary. Pl.'s Response at 7.

The court finds *CYR* inapposite to the present case. In *CYR*, the government invoked the defense of accord and satisfaction, arguing that the parties' agreement regarding the costs of the changed work terminated the contractor's right to recover the cost of the delayed unchanged work, and the court held that the agreement did not constitute an accord and satisfaction. 27 Fed.Cl. at 159. Defendant here has not invoked that defense, however; rather, it argues that plaintiff never had a contractual right to the costs it seeks to recover. Moreover, *CYR* involved a contract with the Army Corps of Engineers rather than the VA, and the contract language was sufficiently different from the disputed language here that it offers this court little guidance. *Id.* Most importantly, the language in *CYR* was a standard provision that recited the Army Corps's Changes clause, whereas the reservation clause in this case was specifically negotiated by the parties, as discussed above. *Id.* The *CYR* court limited the scope of the agreement "in the absence of express negotiations," which is not the case here. *Id.* Most importantly, in *CYR* the contracting officer agreed orally that the contractor could submit a claim for overhead, which the VA in this case did not do. *Id.* at 157.

In support of its position, defendant relies on *Reliance*, discussed above, and *Santa Fe* for the proposition that the VA's limitations on recovery of overhead apply to delay costs. Def.'s Mot. at 10–11.

In *Santa Fe*, the contractor argued that the VA's regulation conflicted with the government-wide changes clause set forth in the Federal Procurement Regulations (FPR), the predecessor to the Federal Acquisition Regulations (FAR), and that, in the event of a conflict, the FPR prevailed. 801 F.2d at 381. The Court of Appeals for the Federal Circuit held that there was in fact no conflict between the regulations at issue, because the VA provision that limited recovery of overhead stated that it "supplement[ed]" the regulation permitting recovery of delay expense. *Id.* at 382. As the *Santa Fe* court noted, the VA needed explicit authorization before it could promulgate regulations that deviated from the FPR; it was, however, permitted to "supplement" the FPR's regulations without further authorization. *Id.* (citing 41 C.F.R. §§ 8–1.108(c), 8–1.109–2(a) (1982)). The court viewed the VA's regulations as supplementing rather than conflicting with the FPR. *Id.* The *Reliance* case involved a similar conflict, and the United States Claims Court relied on the *Santa Fe* court's finding that the overhead restriction was "supplement[ary]" to the changes clause permitting equitable adjustments for impact costs. 20 Cl.Ct. at 720–21. The Federal Circuit's affirmance of the Claims Court's *Reliance* decision stressed the importance of interpreting a contract in a way that avoids internal contradictions. *Reliance Ins. Co. v. United States,* 931 F.2d 863, 865 (Fed.Cir.1991).

*Santa Fe* and *Reliance* are significant for the disposition of this case insofar as they establish that a contractor is not necessarily entitled to recover delay overhead costs. In *Santa Fe*, the contractor specifically reserved the right to submit a claim for delay overhead costs, but the court rejected the contractor's distinction between overhead arising from direct costs and overhead arising from delay. 801 F.2d at 381. Similarly, in *Reliance*, a clause in the contract permitted the contractor to seek an equitable adjustment for increased costs and delay. 20 Cl. Ct. at 717. Both of those courts found that a contractual limitation on recovery of overhead included delay overhead costs, absent an explicit provision to the contrary, and the *Santa Fe* court refused to make a distinction similar to the one argued by Plaintiff here. *Santa Fe* and *Reliance* show, therefore, that

delay overhead is within the scope of the VA's percentage limitation on recovery of overhead.

*Santa Fe* and *Reliance,* which involved claimed contradictions within a single document, shed little light on the contract interpretation problem here, namely the application of a regulation incorporated into a contract to a later modification of that contract. The principles that supported the *Santa Fe* and *Reliance* courts' construction of the VA's provision as supplementing, rather than conflicting with, the FPR do not apply here, since the parties here were free to enter into a contract that was inconsistent with the VA regulations (with the approval of the Deputy Assistant Secretary for Acquisition and Materiel Management, under the authority of 48 C.F.R. § 801.403). The modification at issue here does refer to itself as a "supplemental agreement," PPFUF App. at 47, but "supplemental" in the context of a contract modification need not mean that the two provisions are in harmony.

### D. Estoppel

Plaintiff also contends that the VA should be estopped from arguing that plaintiff is not entitled to the equitable adjustment it seeks because the VA represented otherwise during the course of negotiations over the change orders. A party who makes factual representations through words or conduct and later disavows such representations may be estopped from asserting a right against another party who relied to his detriment on the representations. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1041 (Fed.Cir.1992). A party seeking to assert equitable estoppel against the government must show "affirmative misconduct" in the form of a violation of the law. *Henry v. United States,* 870 F.2d 634, 637 (Fed.Cir.1989); *Hanson v. OPM,* 833 F.2d 1568, 1569 (Fed.Cir.1987). The exact meaning of "affirmative misconduct" has never been resolved, but one court has held that even a false statement did not constitute affirmative misconduct because the plaintiff had not shown a "deliberate lie ... or a pattern of false promises." *Mukherjee v.*

*INS,* 793 F.2d 1006, 1009 (9th Cir.1986); *see also OPM v. Richmond,* 496 U.S. 414, 423, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) (reversing a lower court's finding of affirmative misconduct but declining to address in what circumstances such a finding would be proper).

The court need not determine the precise contours of the law of estoppel because plaintiff has not shown that defendant made any factual representations contrary to its present position, let alone that those representations were false or constituted affirmative misconduct. Defendant told plaintiff that it could recover the costs of unchanged work, but plaintiff has not shown that the parties ever agreed that delay overhead qualified as one of the costs of unchanged work. To the contrary, Mr. Spann told plaintiff in his letter of August 27, 1997 that "[i]f a change impacts the critical path of the project, extending time for completion, the overhead is still limited to the percentages specified" in the original contract. PPFUF App. at 81. Mr. Spann's statement, along with the *Reliance* case on which he relied, contradict plaintiff's claim that the parties agreed that delay overhead costs were recoverable as an equitable adjustment.

Nor did the letter from VA Assistant General Counsel Phillipa Anderson to plaintiff misrepresent the government's position. Ms. Anderson told plaintiff that "the issue of reservation of rights [should] be addressed on a change-by-change basis since in many cases the impact of the change can be determined at the time the supplemental agreement is negotiated." PPFUF App. at 78. Nothing in this statement implies that the proposed reservation language would allow plaintiff to recover more overhead costs than the original contract had permitted. Plaintiff now represents that it understood Ms. Anderson's reference to "the impact of the change" to include overhead costs, since it claims that it believed that the overhead costs it now seeks are within the scope of the reservation language, but the negotiation history set out above belies that argument. Tr. at 59–60. That plaintiff initially rejected the language that Ms. Anderson had suggested, and submitted different language that explic-

**240**

itly permitted plaintiff to recover overhead costs, indicates that plaintiff did not construe either Ms. Anderson's letter or her proposed reservation clause as permitting overhead recovery. PPFUF App. at 79–80. Since defendant's statements to plaintiff regarding equitable adjustments were consistent with the position defendant now argues, plaintiff's estoppel argument fails.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion is GRANTED. The court orders the following:

1. The Clerk of the Court is directed to enter judgment for defendant.

2. Each party shall bear its own costs.

IT IS SO ORDERED.