31 F.3d 1176
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
DALCO ELECTRONICS CORPORATION (Formerly Cherokee Electronics
Corporation), Appellant,
v.
John H. DALTON, Secretary of the Navy, Appellee.
 No. 93-1486.
 United States Court of Appeals, Federal Circuit.
 July 1, 1994.
 
 Before ARCHER, Chief Judge, MAYER, and CLEVENGER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Dalco Electronics Corporation appeals the decision of the Armed Services Board of Contract Appeals, Cherokee Electronics Corporation, ASBCA No. 39833, 93-1 BCA p 25,522, and its reconsideration decision, Cherokee Electronics Corporation, ASBCA No. 39833, 93-3 BCA p 26,080. The board granted summary judgment in favor of the Secretary of the Navy that a clause in Dalco's contract, entitled "Potential Application of the Service Contract Act" was valid and enforceable, and that the contracting officer had computed Dalco's equitable adjustment in a manner consistent with the clause. We agree that the clause is valid and enforceable, but we do not agree with the board's interpretation; accordingly, we affirm-in-part and reverse-in-part.
 
 
 2
 The question is who should bear the cost of retroactive incorporation of provisions of the Service Contract Act, 41 U.S.C. Sec. 351 (1988) (SCA), into a contract that was erroneously drafted as a manufacturing contract subject to the Walsh-Healey Public Contracts Act, 41 U.S.C. Sec. 35 (1988). The parties appear to have anticipated this question by including a clause designed to allocate the increased labor costs in the contract. Dalco now challenges the validity of that clause, as well as the interpretation of the clause adopted by the Board of Contract Appeals. These are legal questions, which we review de novo. 41 U.S.C. Sec. 609(b) (1988); Hills Materials Co. v. Rice, 982 F.2d 514, 516 (Fed.Cir.1992).
 
 The Potential Application Clause provides:
 
 3
 (b) In the event that during the performance of this contract, it is determined by appropriate authority that the provisions of the Service Contract Act of 1965, as amended, apply to any of the work covered by this contract, the Contracting Officer may unilaterally implement such determination by requiring payment of the appropriate wage and fringe benefit scale, and the Contractor agrees to comply with such implementation. In the event that compliance with the Contracting Officer's direction results in any increase in the labor rates paid under this contract, the Contractor agrees to enter promptly into negotiations to reflect such an increase. Such contract adjustment shall be limited to increases in wages or fringe benefits affected by the above determination, and the concomitant increases in social security and unemployment taxes and worker's compensation insurance, but shall not otherwise include any amount for profit, or for general administrative costs or overhead.
 
 
 4
 Dalco argues first that the clause does not apply to this case; it applies only when the Department of Labor (DOL) determines "during performance of this contract" that the SCA applies. That did not happen here because, according to Dalco, DOL made its coverage determination before issuance of the solicitation, not during performance, as the clause requires.
 
 
 5
 But the clause says nothing about determinations prior to performance of the contract; it applies only when a determination is made during performance. That happened here when, five months after the Navy awarded the contract, DOL decided the contract should have included SCA provisions. This was a determination that the SCA applied, invoking the Potential Application Clause, which was included in the contract for just this contingency. The board correctly held that the clause applies here. See Madigan v. Hobin Lumber Co., 986 F.2d 1401, 1403 (Fed.Cir.1993) (agreed-upon contract terms must be enforced).
 
 
 6
 Dalco next asserts that even if the Potential Application Clause did apply, it is void because it conflicts with the statutory directive that entrusts DOL with the authority to implement the SCA. Dalco says the clause allows contracting officers to ignore DOL's authority and decide for themselves whether the SCA applies to a given procurement contract. Accordingly, Dalco urges that inclusion of the Potential Application Clause exceeds the contracting officer's authority, and that we should excise the clause from its contract.
 
 
 7
 We do not agree that the clause impermissibly intrudes on DOL's authority to make the ultimate decisions about whether the SCA applies; it simply fills in the contractual gaps created by DOL's subsequent direction to incorporate SCA provisions. Cf. Santa Fe Engineers, Inc. v. United States, 801 F.2d 379, 382 (Fed.Cir.1986) (approving clause designed to supplement, not conflict with, other provisions). The contractor points to DOL's July 11, 1985, Response to Notice of Intention to Make a Service Contract, arguing that this was a definitive determination of SCA coverage that should bind the contracting officer. But the regulatory scheme implementing the statute recognizes that it is the contracting officer who must initially decide whether the SCA applies to a given procurement. If he believes it does, then he must file an SF 98. 29 C.F.R. Sec. 4.4 (1993). On the other hand, if he decides that the procurement does not seek services covered by the SCA, then he need not file the SF 98 or incorporate SCA provisions. Cf. id. (requiring submission to DOL only if there are questions about SCA applicability).
 
 
 8
 The Response was a preliminary ruling that the cited wage determinations applied to the solicitation. It was based solely on the SF 98's limited description of services to be performed. The contracting officer did not flaunt DOL authority when, after a thorough review of the facts, he decided that his initial decision that the SCA applied had been a mistake.* Although DOL may not have agreed with the contracting officer, that alone hardly robs it of its statutory power to make the final determination. In this case, the contracting officer complied with DOL's eventual instruction to substitute SCA provisions for those of the Walsh-Healey Public Contracts Act; the Potential Application Clause was simply the contractual framework to implement the DOL determination.
 
 
 9
 Nothing in the record suggests the contracting officer acted in bad faith or was motivated to avoid a disadvantageous DOL ruling; his actions were fully disclosed to potential bidders. Dalco did not dispute the characterization of the contract as a manufacturing contract, even though it knew the solicitation had originally included SCA provisions. Nor did Dalco object to inclusion of the Potential Application Clause. It entered its contract with full knowledge of the clause, and there is no reason under the circumstances not to hold it to the terms of the contract. Reliance Ins. Co. v. United States, 931 F.2d 863, 867 (Fed.Cir.1991).
 
 
 10
 But we do not entirely agree with the board's interpretation of the clause as barring recovery of both indirect costs and that part of direct costs representing the difference between the estimated rates used in pricing the procurement and the lower wages Dalco eventually paid its workers. Under the clause, if DOL determines that the SCA applies, the contracting officer must unilaterally implement the determination by requiring payment by the contractor of the wage and fringe benefits scale mandated by the SCA. If the contractor's compliance results in an increase in labor rates paid under the contract, then the parties agree to negotiate an adjustment. This adjustment is limited to the increase in wages and fringe benefits resulting from the determination, plus concomitant social security, unemployment taxes, and worker's compensation insurance; it is not to include any amount for profit, general administrative costs, or overhead.
 
 
 11
 The government argues that labor rates means the rates paid by the government to the contractor, and that the adjustment is therefore pegged to the negotiated rates used in the contractor's proposal. But an increase in labor rates triggers the parties' agreement to negotiate an adjustment. Negotiation is not required only when rates paid by the government to the contractor somehow increase; the very purpose of negotiations was to adjust the government's payments to the contractor to reflect increased costs. It makes far more sense to read labor rates as a general term, an amalgam of the various costs associated with the contractor's labor needs. The clause then sets a limit on the size of the adjustment: it is only to cover the direct cost element of labor rates, and not the indirect costs.
 
 
 12
 Nor are we persuaded that paragraph (c) supports the government's position. That paragraph says the contractor's request for an adjustment must include all data it used in preparing its original proposal. The government suggests this requirement makes sense only if the resulting adjustment is limited to increases in wages and fringe benefits above the estimated rates the contractor used in preparing its proposal. But paragraph (c) does not address the amount of the adjustment, and does not suggest that it should be calculated using the proposed labor rates; it simply requires that the contractor disclose all relevant data to the contracting officer. The dissenting board members put forth another, more plausible, meaning: the language cited was intended to help the government enforce paragraph (a), in which the contractor warrants that the contract prices, based on the proposal estimates, "do not include any allowance for the contingency to cover increased costs" from retroactive incorporation of SCA provisions.
 
 
 13
 The contractor was entitled to the full measure of increased direct costs it incurred as a result of the incorporation of SCA provisions, including the difference between the estimated rates used in preparation of the proposal and the lower rates actually paid to Dalco's employees. The board correctly denied Dalco's request for an adjustment covering increased indirect costs, which are barred by the Potential Application Clause.
 
 
 14
 Each party shall bear its own costs.
 
 
 
 *
 Indeed, Dalco itself offered a letter, cited by the board, from a Deputy Assistant Administrator at DOL acknowledging that a wage determination issued in response to an SF 98 is not a final determination by DOL, which can only be made after an in depth review of the relevant documents. Moreover, in correspondence between DOL and the contracting officer, the Administrator of DOL's Wage and Hour Division referred to "the January 14 determination that the referenced contract ... is subject to the Service Contract Act," a clear allusion to the January 14, 1987 letter, not the July 11, 1985 Response to the SF 98