RADER, Circuit Judge.
 

 Reliance Insurance Company (Reliance) sought equitable adjustment of construction contract No. V101C-1089 with the Veteran’s Administration (VA). The United States Claims Court dismissed four of Reliance’s claims for additional delay overhead.
 
 Reliance Ins. Co. v. United States,
 
 20 Cl.Ct. 715 (1990). Reliance appealed. This court affirms.
 

 BACKGROUND
 

 In September 1982, L.G. Lefler, Inc. (Le-fler) contracted with the VA for construction of a clinical addition to a hospital in Tucson, Arizona. The construction was to take 950 days and was worth $11,331,-500.00. Reliance was Lefler’s performance and payment bond surety. If Lefler defaulted, Reliance was responsible to complete the project.
 

 During the contract, the VA issued more than 200 change orders. These changes extended the project by 498 days. Defective contract specifications caused the changes and delays. Attempting to clarify the specifications, Lefler submitted approximately 150 requests for information to the VA during the project.
 

 In late 1984, Lefler defaulted and Reliance assumed responsibility for the contract’s completion. Reliance subsequently submitted six equitable adjustment claims, totaling $1.3 million. Four of these claims sought payment for extended home and field office overhead beyond the delay overhead payments awarded to Reliance under contract clause G-10. The G-10 clause limited overhead recoveries to a percentage of the value of contract changes plus an allowance for profit. The other two claims are not limited to overhead costs. The VA contracting officer denied each claim.
 

 Reliance brought a direct access suit in the Claims Court under the Contract Disputes Act of 1978, 41 U.S.C. § 609(a)(1). The Government moved for partial summary judgment on the four delay overhead claims. The Claims Court granted the Government’s motion, dismissed the four claims, and suspended action on the other two claims pending this appeal. This court has exclusive jurisdiction over Reliance’s appeal under 28 U.S.C. § 1295(a)(3) (1988).
 

 DISCUSSION
 

 In the absence of disputes over material facts, a court may grant the summary judgment motion of a party otherwise enti-
 
 *865
 
 tied to judgment as a matter of law. Fed.R.Civ.P. 56(c);
 
 Anderson v. Liberty Lobby, Inc., 477
 
 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Reliance appeals from a grant of partial summary judgment entered under United States Claims Court Rule 54(b). Therefore, this court views the evidence and draws inferences in Reliance’s favor.
 
 See D.L. Auld Co. v. Chroma Graphics Corp.,
 
 714 F.2d 1144, 1146 (Fed.Cir.1983).
 

 This appeal requires this court to examine the Claims Court’s application of the G-10 clause to Reliance’s delay overhead claims. Contract interpretation is a question of law which this court reviews under a
 
 de novo
 
 standard.
 
 P.J. Maffei Bldg. Wrecking Corp. v. United States,
 
 732 F.2d 913, 916 (Fed.Cir.1984).
 

 Reliance’s contract contains a clause limiting overhead payments in the event of change orders. The G-10 clause states:
 

 A. Clause 3, Changes and Clause 4, Differing Site Conditions ... are supplemented as follows:
 

 * * * * * *
 

 4. Allowances not to exceed 10 percent each for overhead and profit for the party performing the work will be based upon the value of labor, material and use of construction equipment required to accomplish the change. As the value of the change increases, a declining scale will be used in negotiating the percentage of overhead and profit. Allowable percentages on changes will not exceed the following: 10% overhead and 10% profit on first $20,000;
 
 llk%
 
 overhead and
 
 llk%
 
 profit on next $30,000; 5% overhead and 5% profit on balance over $50,000____
 

 See also,
 
 48 C.F.R. Ch. 8, § 852.236-88(b)(d) (1989). The G-10 clause sets a ceiling on the amount of overhead costs recovery under the standard changes clause. 48 C.F.R. Ch. 1, § 52.243-4 (1989).
 

 The G-10 clause does not conflict with the standard changes clause. Nor does the G-10 clause effectively eliminate the changes clause. By its terms, G-10 supplements and limits the standard changes clause. The contract itself states that G-10 supplements the changes clause. The addition of G-10 places a ceiling on delay overhead recoveries.
 

 Further, in reading the contract as a whole, this court interprets provisions to avoid conflicts with other provisions in the same document.
 
 Julius Goldman’s Egg City v. United States,
 
 697 F.2d 1051, 1057-58 (Fed.Cir.1983);
 
 United States v. Johnson Controls, Inc.,
 
 713 F.2d 1541, 1555 (Fed.Cir.1983). Accordingly, the proper interpretation of Reliance’s contract is that the changes clause does not cover delay overhead beyond the percentage limits in the G-10 clause.
 

 The G-10 clause operates regardless of the size and scope of contract changes. The large number and dollar value of changes in Reliance’s contract does not alter the operation of the G-10 limit. Rather, the language of G-10 adjusts the percentage ceilings on delay overhead to account for larger changes. By setting a 5% overhead limit on the balance of changes over $50,000.00, the contract explicitly provided for larger changes. Hence, by its terms, the G-10 clause limits recovery on delay overhead claims of various sizes and costs.
 

 This court has consistently interpreted the G-10 clause. This court interpreted this same clause with the same result in 1986.
 
 Santa Fe Eng’rs, Inc. v. United States,
 
 801 F.2d 379 (Fed.Cir.1986). The
 
 Santa Fe
 
 contract also involved construction on a VA Hospital. The VA issued a change order for different ceiling materials. The parties amicably adjusted the contract price for direct costs but disputed the delay overhead costs. This court determined that “the literal words of G-10 blanket delay overhead as well as overhead on the direct costs incurred by the contractor.”
 
 Santa Fe,
 
 801 F.2d at 381.
 

 Like Reliance, the contractor in
 
 Santa Fe
 
 asserted that G-10 conflicts with the standard changes clause. This court dismissed that contention. Citing
 
 Jack Picoult Constr. Co. v. United States,
 
 207 Ct.Cl. 1052, 529 F.2d 532 (1975), this court noted
 
 *866
 
 that the Court of Claims had “in effect already held that not to be so.”
 
 Santa Fe,
 
 801 F.2d at 382. This court found no conflict between the G-10 and the changes clauses in 1986 and finds no conflict today.
 

 Although the
 
 Santa Fe
 
 change order cost one tenth of
 
 1%
 
 of the contract’s total value as compared to 10% of the contract value in this case, the Claims Court properly disregarded these factual differences:
 

 [T]he court does not feel that the
 
 Santa Fe
 
 holding should be ignored or limited as requested by plaintiff. Moreover, it has been held that the number of change orders is not controlling with regard to whether changes are within the scope of the contract, and the court feels this rule is applicable with regard to whether the changes are within the scope of the G-10 clause.
 

 Reliance,
 
 20 Cl.Ct. at 721 (citation omitted). The Claims Court correctly stated that application of these contract clauses does not depend on the size or number of change orders.
 

 Like Reliance, the contractor in
 
 Santa Fe
 
 raised
 
 Morrison-Knudsen Co. v. United States,
 
 397 F.2d 826, 184 Ct.Cl. 661 (1968).
 
 Morrison-Knudsen
 
 resolves conflicts between a general changes clause and other contract provisions in favor of the standard changes clause.
 
 Id.
 
 397 F.2d at 829.
 
 Morrison-Knudsen,
 
 however, does not apply to this case.
 

 In
 
 Morrison-Knudsen,
 
 the contract specified the location of borrow pits for road construction. When the specified borrow pits did not produce proper materials, the contractor sought to adjust the contract price to account for changing borrow pits. The Government’s specifications had necessitated the change. Yet a specific contract provision denied the contractor any compensation for changes unless the total cost of contract adjustments exceeded 25% of the contract price. Because the borrow pit change did not reach the 25% cutoff, the contract in
 
 Morrison-Knudsen
 
 shifted the entire cost of the defective specifications to the contractor. Noting that these circumstances altered “the entire contemplated basis for performance of the contract,”
 
 id.
 
 397 F.2d at 844, the Court of Claims determined that the changes clause should override the 25% clause.
 

 This case is different. The G-10 clause does not eliminate the standard changes clause. Nor does G-10 shift to the contractor the entire cost of correcting specification defects. Reliance’s changes clause generally allows for equitable adjustment claims. G-10 limits the delay overhead and profit components of these claims. However, G-10 does not eliminate the right to seek equitable adjustments to the contract nor does it deprive the changes clause of most of its ordinary coverage.
 

 No claims that the Government breached the contract or its duty of good faith are properly before this court. Reliance only submitted to the contracting officer claims for equitable adjustment to the contract. Reliance did not submit to the contracting officer a clear and unequivocal claim that the VA breached the contract or its duty of good faith. Thus, Reliance did not satisfy 41 U.S.C. § 605(a) (1988).
 
 [1]
 

 Contract Cleaning Maintenance, Inc. v. United States,
 
 811 F.2d 586, 592 (Fed.Cir.1987). Consequently, the Government has not waived its sovereign immunity with respect to any breach claims. The Claims Court and this court lack jurisdiction to consider these claims.
 
 [2]
 

 We also note that Reliance entered its contract with full knowledge of the
 
 *867
 
 G-10 limits on delay overhead under the changes clause.
 
 Reliance,
 
 20 Cl.Ct. at 722. For this reason also, Reliance is bound by the agreed upon limitations of G-10.
 
 Cf., Do-Well Machine Shop, Inc. v. United States,
 
 870 F.2d 637, 641 (Fed.Cir.1989). In sum, the G-10 clause did not deprive the changes clause of most of its ordinary coverage, rather the ordinary coverage of the changes clause in Reliance’s contract includes limits on delay overhead.
 

 Lastly, the G-10 clause does not apply only to “the party performing the work” under a change order as Reliance contends. The Claims Court correctly applied the clause to Reliance:
 

 [T]he subcontractors on this project are not in privity of contract with the government. Therefore, the “party performing the work” can only mean plaintiffs, since they are the contracting party to whom the G-10 clause applies.
 

 Reliance,
 
 20 Cl.Ct. at 724 (citations omitted).
 

 CONCLUSION
 

 The language of the contract and the
 
 Santa Fe
 
 decision control this case. Accordingly, the Claims Court’s judgment is
 

 AFFIRMED.
 

 [1]
 

 . Section 6(a) of the Contract Disputes Act, 41 U.S.C. § 605(a), provides in pertinent part:
 

 All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision.
 

 [2]
 

 . Reliance notes in its opening brief that it believes that dismissal of the four claims at issue herein can only pertain to Count III of its complaint and that thereafter it may maintain an action for full monetary damages under Counts I, II and IV of the complaint. However, although Reliance’s complaint presents four distinct counts, each of the four counts essentially charges that the contracting officer erroneously denied Reliance’s six contract claims. Accordingly, dismissal of four of these contract claims will leave Reliance with two remaining contract claims.