**UNITED STATES of America, Plaintiff,**

v.

**OWNBEY ENTERPRISES, INC., Defendant.**

**Civ. A. No. 4:91–cv–64–HLM.**

United States District Court,
N.D. Georgia,
Rome Division.

Nov. 15, 1991.

Kenneth J. Riemer, U.S. Dept. of Justice, Environmental Enforcement Section, Washington, D.C., for plaintiff.

F. Edwin Hallman, Jr., Decker & Hallman, Atlanta, Ga., for defendant.

## ORDER

HAROLD L. MURPHY, District Judge.

This case is before the Court on Plaintiff's Motion to Dismiss Defendant's Counterclaim and Plaintiff's Motion to Dismiss Defendant's Amended Counterclaim. Plaintiff claims that Defendant's counterclaim is not a proper recoupment claim and, accordingly, should be dismissed. Plaintiff also argues that even if the recoupment claim is valid, Defendant's counterclaim is barred by sovereign immunity. Defendant argues, however, that its claim is a proper recoupment claim and, therefore, the government waived its sovereign immunity. This Court concludes that Defendant's counterclaim is not a proper recoupment claim and, consequently, grants Plaintiff's Motion to Dismiss.

## FACTS

Because this case comes before the Court on a Motion to Dismiss, this Court must assume the truth of the material facts as alleged in the counterclaim.[1] In 1982, Defendant, Ownbey Enterprises, Inc. ("Ownbey") purchased some underground storage tanks ("USTs") which were used to supply petroleum products to the Deep Springs Superette. On May 5, 1987, Plaintiff, through the Environmental Protection Agency ("EPA"), informed Ownbey that the USTs were the source of contamination present in the area surrounding the Superette. In reliance on Plaintiff's information, Ownbey removed the USTs in June 1987.

After this removal, and because of Plaintiff's continual investigation and goading, Ownbey signed an Administrative Order in early 1989. This Order requires Ownbey to implement a corrective action plan which would clean up the contaminated area by removing the contaminated soil and ground water in the vicinity of the USTs. The Order also requires Ownbey to provide an alternative permanent water supply for users of a drinking well known as the Mathis well.

In 1990, in response to a Freedom of Information Act request, Ownbey discovered that there were two other possible sources for the contamination. Ownbey also discovered that the EPA knew these other possible sources existed when they forced Ownbey to sign the Administrative Order. After this discovery, Ownbey conducted its own investigation into the source of the contamination and concluded that its tanks were not the cause of the contamination. This new information was given to the EPA, which responded by threatening to impose fines if Ownbey did not fully comply with the Administrative Order which Ownbey had previously signed.

Subsequently, because of Ownbey's noncompliance with the Administrative Order Plaintiff filed this action pursuant to § 9006 of the Resource Conservation and

1. *Summit Health, Ltd. v. Pinhas,* — U.S. —, (1991). —, 111 S.Ct. 1842, 1845, 114 L.Ed.2d 366, 372

Recovery Act ("RCRA"), 42 U.S.C.A. §§ 6901—92k. Plaintiff seeks injunctive relief to compel Defendant to comply with the terms of the Administrative Order. In addition, Plaintiff also requests this Court to impose civil penalties as authorized by RCRA, 42 U.S.C.A. § 6991e(a)(3).

Defendant filed its answer and asserted a counterclaim alleging that Plaintiff misrepresented the facts to Defendant to induce it to sign the Administrative Order. Specifically, Defendant asserts that the EPA misrepresented the facts concerning the source of the contamination and that they fraudulently withheld information from Defendant so that the EPA could force Defendant to sign the Administrative Order. Defendant further alleges that Plaintiff failed to satisfy its statutory and regulatory obligations to investigate properly the contamination site and any other possible sources of the contamination. Defendant requests an injunction to prevent the enforcement of the Administrative Order and recoupment of damages incurred as a result of the EPA's wrongful acts and investigation.

Plaintiff did not answer Defendant's allegations. Instead, Plaintiff moved for a dismissal of the counterclaim stating that the government did not waive its sovereign immunity in this case because: (1) Ownbey did not exhaust its administrative remedies before filing this tort claim; (2) the Federal Tort Claims Act's (FTCA) misrepresentation and deceit exceptions bar this claim based on allegedly false representations, 28 U.S.C. § 2680(h); and (3) the EPA's investigation and handling of the environmental cleanup is a discretionary function of the EPA and falls within the discretionary function exception to the FTCA, 28 U.S.C.A. § 2680(a). Plaintiff also contends that the counterclaim is not a proper recoupment claim and that even if the counterclaim is a proper recoupment claim, the FTCA bars the claim as it sounds in tort.

After Plaintiff filed its Motion to Dismiss, Defendant amended its counterclaim. The only substantive change in the amended counterclaim is that Defendant more succinctly stated its intent to seek recoupment of costs, instead of compensatory damages. In responding to Plaintiff's motion, Defendant argues that the amended counterclaim is a proper recoupment claim because Defendant is only seeking to reduce any award Plaintiff may receive from their request for civil penalties, not the imposition of additional monetary relief. Furthermore, Defendant contends that the government waived its sovereign immunity for compulsory counterclaims (recoupment), when it initiated this action.

1. *Plaintiff's Objection to Defendant's attempt to amend the counterclaim.*

■ Plaintiff objects to Defendant's filing of an amended answer and counterclaim. Plaintiff contends that the amendment is futile because it does not correct the infirmities of the original counterclaim. Furthermore, Plaintiff states that because the original counterclaim should be dismissed, Defendant should not be allowed to amend the counterclaim because the amendment does not substantively change the counterclaim. Defendant argues that because Plaintiff has not filed a "responsive pleading", Defendant is allowed to amend its counterclaim as of right without the court's permission.

Federal Rule of Civil Procedure 15(a) allows a party to amend its pleading once as or right "before a responsive pleading is served." Fed.R.Civ.P. 15(a). Here, the Plaintiff has only filed a Motion to Dismiss, which is not a responsive pleading. *See* 3 JAMES W. MOORE, WALTER J. TAGGART & JEREMY C. WICKER, MOORE'S FEDERAL PRACTICE ¶ 15.07[2] (2d ed. 1991). Accordingly, Defendant exercised its legal right to amend prior to the filing of a responsive pleading and, therefore, this Court will consider the counterclaim as presented in the amended form.

2. *Defendant's Request for Recoupment.*

■ The United States has sovereign immunity from suit and can be sued only to the extent that it has consented to be sued. *United States v. Mitchell*, 445 U.S. 535,

538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). Consequently, a court's jurisdiction to entertain a suit against the United States is governed by the terms of the government's consent. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1940) (citations omitted). This consent can come from either a specific statutory enactment or by the government filing a lawsuit. *E.E.O.C. v. First Nat'l Bank of Jackson*, 614 F.2d 1004, 1007 (5th Cir.1980), *cert. denied*, 450 U.S. 917, 101 S.Ct. 1361, 67 L.Ed.2d 342 (1981). This affirmative act of instituting a lawsuit by the government acts as a waiver of sovereign immunity as to compulsory counterclaims, such as recoupment. *Frederick v. United States*, 386 F.2d 481, 488 (5th Cir.1967); *United States v. Northside Realty Assoc.*, 324 F.Supp. 287, 292 (N.D.Ga.1971). "When the government waives immunity in this manner, it does so even as to those claims that ordinarily are barred by the FTCA." *United States v. Johnson*, 853 F.2d 619, 621 (8th Cir.1988). Consequently, the government waived its sovereign immunity in this case if Defendant's claim is a proper claim in recoupment.

■ Black's Law Dictionary defines recoupment as "a keeping back something which is due because there is an equitable reason to withhold it." BLACK'S LAW DICTIONARY 1439 (rev. 4th ed. 1968). Accordingly, a recoupment claim "is the right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising out of the very [action] giving rise to the plaintiff's claim." *F.D.I.C. v. Corning Sav. & Loan Ass'n*, 696 F.Supp. 1245, 1247 (E.D.Ark.1988). A claim in recoupment is a compulsory counterclaim and only entitles the defendant to a reduction in the amount owed the plaintiff. *Frederick*, 386 F.2d at 488. Recoupment does not allow relief for the defendant which is different than the relief sought by the plaintiff. *Id.*

■ To establish a recoupment claim, the defendant must meet three requirements: (1) the claim must arise from the same transaction or occurrence as the government's suit; (2) the relief sought must be of the same kind or nature as the Plaintiff's requested relief; and (3) any damages sought cannot exceed the amount sought by the government's claim. *Frederick*, 386 F.2d at 488. Applying these criteria to the Defendant's counterclaim, this Court concludes that the counterclaim is not a proper recoupment claim.

It is clear that Defendant's counterclaim arises from the same transaction or occurrence which gave rise to Plaintiff's claim because both claims center on the enforceability of the Administrative Order. Plaintiff contends that the Administrative Order is a valid order and is an enforceable agreement. Defendant, however, contends that the agreement is not enforceable because the EPA misrepresented the facts which caused Defendant to sign the agreement. Accordingly, because both claims arise out of the validity of the Administrative Order, Defendant's counterclaim meets the first requirement of recoupment.

■ Plaintiff also argues that Defendant's claim does not meet the last two *Frederick* requirements because the Defendant has asked for different relief than the Plaintiff and because Defendant's requested relief would exceed any monetary damages which the Plaintiff could receive. Here, both sides seek an injunction to determine the viability of the Administrative Order. A request for an injunction, however, cannot be a recoupment claim because, as stated above, recoupment is a defensive action which can only reduce a plaintiff's monetary award, while an injunction is an affirmative request for relief. As such, an injunction by its very nature is not a proper request in a recoupment claim because an injunction does not seek to reduce a plaintiff's monetary award. Instead, an injunction is a request for relief unrelated to a plaintiff's ability to recover monetary damages. Accordingly, Defendant's request for an injunction is not a proper request in recoupment. Moreover, as discussed *infra* § 3, Defendant's request for an injunction is moot.

In addition to the requests for injunctions, both sides also seek monetary awards. Plaintiff seeks the imposition of statutory civil penalties pursuant to 42 U.S.C.A. § 6991e(3) and ¶ 18 & 19 of the Administrative Order, while Defendant's counterclaim seeks damages and costs incurred as a result of Plaintiff's alleged wrongful acts. Defendant limited its request for damages by stating that these damages are not to exceed any possible recovery that Plaintiff may be awarded in this action. Although both requests for relief concern monetary awards, the requests are not of the same nature or type.

Here the government is not asking for damages, it is asking for the imposition of a monetary penalty for failure to comply with the Administrative Order. A recoupment claim can be asserted only when the plaintiff is seeking damages for a defendant's actions and the defendant counterclaims seeking to reduce any potential damage award because of the plaintiff's actions. In the case at bar, the government is not seeking statutory penalties because of any harm suffered by the government in this case. The civil penalties are being sought to ensure compliance with an Order issued by the EPA.

Defendant's request for damages, on the other hand, is to compensate for harm it allegedly suffered. These two requests are fundamentally different in scope and nature because they seek to rectify two different types of alleged wrongs. If the Plaintiff had requested damages and costs, however, and not statutory penalties, the Defendant's requested relief would have been the same as Plaintiff's and, consequently, a proper recoupment claim. Without this equality of scope and nature between the two requests, Defendant's request is not a proper recoupment claim. *See United States v. 2116 Boxes of Boned Beef,* 726 F.2d 1481, 1490 (10th Cir.1984) (recoupment not allowed when government sought seizure of beef carcasses and defendant sought money damages for reduced value of carcasses after seizure.), *cert. denied,* 469 U.S. 825, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984); *F.D.I.C. v. Corning Sav. & Loan Ass'n,* 696 F.Supp. 1245, 1247 (E.D.Ark.1988) (recoupment claim not allowed when government sought ownership of money deposits and defendant sought damages for alleged misrepresentation concerning ownership of money deposits). *See also United States v. Moore,* 703 F.Supp. 455, 458–59 (E.D.Va.1988) (recoupment claim allowed when government brought action to recover cleanup costs under CERCLA and defendant requested recoupment claiming that government was responsible for the environmental problem which initiated the need for a cleanup); *F.D.I.C. v. Carter,* 701 F.Supp. 730, 732–33 (C.D.Cal.1987) (recoupment claim allowed when government sought damages for negligence and breach of fiduciary duty and defendant counterclaimed for damages because of government negligence arising out of same transaction), *holding questioned in F.D.I.C. v. Baker,* 739 F.Supp. 1401 (C.D.Cal.1990) (*Baker* court questioned *Carter*'s holding concerning FDIC's ability to be sued in negligence, but did not address recoupment requirements).

Accordingly, even though Defendant did limit its request for damages, Defendant's relief is not of the same nature as Plaintiff's requested relief.[2] Therefore, Defendant's request for damages, as stated in the amended counterclaim, does not meet the *Frederick* criteria and is not a proper recoupment claim. Consequently, the Plaintiff's Motion to Dismiss is granted as to Defendant's request for the recoupment of costs.

### 3. *Defendant's Request for an Injunction.*

Both parties' objections and assertions regarding the waiver of sovereign immunity concerning the Defendant's request for an injunction are really an attempt to put form over substance. Defendant maintains

---

**2.** The government seeks civil penalties under 42 U.S.C.A. § 6991d(a)(3) which mandates that the Court shall impose a civil penalty of up to $25,000 for each day of noncompliance with an administrative order. In this case, even if the Court finds that the Administrative Order is valid, the Court can weigh the equities and use its discretion in fixing the amount of the fine.

that the government engaged in fraud and deceit in inducing Defendant to sign the consent order. Defendant further alleges that the government knowingly withheld information which proved that Defendant's USTs were not the cause of the contamination. Plaintiff asserts, however, that the FTCA bars the Defendant's counterclaim. Plaintiff contends that the investigation into the source of the contamination in question was a discretionary function of the EPA and as such the government is immune from suits based on discretionary functions. 28 U.S.C.A. § 2680(a). Plaintiff also argues that because the counterclaim allegations are based on alleged misrepresentation by the EPA the suit is barred by the FTCA exception which bars any actions against the government based on misrepresentation or deceit. 28 U.S.C.A. § 2680(h).

Assuming, without deciding that the counterclaim for an injunction is barred by the FTCA, Plaintiff must still show that the Administrative Order is valid and that this Court should order an injunction compelling Defendant to fully comply with the Order. To prevent the enforcement of the Order, whether with an affirmative injunction or denial of Plaintiff's request, Defendant must show that the Administrative Order is unenforceable and invalid. Each party is required to prove the same allegations whether it be in relation to the Plaintiff's request for an injunction or the Defendant's. The enforceability of the Administrative Order hinges on the EPA's conduct. Although the EPA has broad discretion to ensure that the environment is protected, it also has to follow the applicable regulations. *See* 42 U.S.C.A. § 6991b(h)(2) (West supp. 1991)

The EPA is authorized to issue administrative orders which require compliance with the standards enunciated in RCRA. 42 U.S.C.A. § 6991e(a)(1) (West supp. 1991). These administrative orders can be issued after the Administrator determines that a person is in violation of RCRA. *Id.* One of RCRA's requirements is that USTs should not leak and contaminate the surrounding environment. *Id.* To expedite the cleanup and prevention of these leaks, the Administrator has issued regulations,

which the EPA must comply with, concerning what should be done when a leak is discovered. *See* 42 U.S.C.A. § 6991b(h); 40 C.F.R. §§ 280.60—.67 (1990).

The EPA's authority to require a corrective action plan, as was issued in this case, comes from 40 C.F.R. § 280.66(a) (1990). That regulation states that "[a]t any point after reviewing the information submitted in compliance with § 280.61 through § 280.-63, the implementing agency (EPA) may require owners and operators to submit additional information or to develop and submit a corrective action plan for responding to contaminated soils and ground water." *Id.* Section 280.61 states that "[u]pon **confirmation** of a release (of contaminants into the environment) . . . or after a release from the UST system is **identified** in any other manner" owners and operators must comply with the regulations governing the cleanup of the contamination site. 40 C.F.R. § 280.61 (1990) (emphasis added). The key to the owners' liability resides in what constitutes a "confirmation of a release" or an "identification of a release".

In analyzing this case under either Plaintiff's request for an injunction or Defendant's request for an injunction, the determinative issue is whether the EPA correctly followed the applicable regulations when they decided that Defendant's USTs were the cause of the contamination. This question will decide the enforceability of the Administrative Order because if the correct procedures were not followed, the EPA could not have required the Defendant to submit to the Administrative Order. If there was adequate compliance, however, the EPA has the authority to require the Defendant to submit to the Administrative Order.

■ Consequently, although the arguments of each party concerning the waiver of sovereign immunity and the applicability of the FTCA may apply in form, the substance behind the allegations and the real issues of this case are wholly unaffected by a judicial determination of the applicability of sovereign immunity. Regardless of

whether this Court considers Plaintiff's injunction or considers Defendant's injunction, the facts and issues in this case are the same. Moreover, Defendant has included the same allegations which form the foundation of the counterclaim as affirmative defenses in its answer to the original government complaint. Therefore, Defendant's request for injunctive relief is Moot because regardless of which request for injunctive relief the Court considers, the Court will ultimately decide the enforceability of the Administrative Order because of the Defendant's assertion of these affirmative defenses.[3]

Accordingly, the Court GRANTS both Plaintiff's Motion to Dismiss the Counterclaim and Plaintiff's Motion to Dismiss the Amended Counterclaim.

IT IS SO ORDERED.

---

**3.** Misrepresentation is allowed as an affirmative defense when it arises out of the same transaction that is the subject matter of the government's suit. *Cox v. Kurt's Marine Diesel of Tampa,* 785 F.2d 935, 936 (11th Cir.1986).