**UNITED STATES of America,
Plaintiff,**

v.

**The INTRADOS/INTERNATIONAL MANAGEMENT GROUP et al., Defendants.**

**No. CIV.A. 01–0769(RMU).**

United States District Court,
District of Columbia.

Aug. 14, 2003.

---

### *MEMORANDUM OPINION*

Granting the Plaintiff's Motion to Dismiss the Defendants' Counterclaim Without Prejudice and Inviting the Parties to Brief the Option of a Limited Stay of Proceedings

URBINA, District Judge.

## I. INTRODUCTION

This *qui tam* action arises from our nation's privatization of foreign commerce markets. The United States ("the plaintiff" or "the government") brings suit un-

der the False Claims Act ("FCA"), as amended, 31 U.S.C. §§ 3729–3733, and various common-law theories. The defendants assert a counterclaim for recoupment,[1] alleging that the plaintiff is in breach of contract. The matter now comes before the court on the plaintiff's motion to dismiss the defendants' counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(1) for want of subject-matter jurisdiction. The plaintiff contends that it has not waived sovereign immunity from suit and that the defendants have failed to exhaust their administrative remedies as required under the Contract Disputes Act ("CDA"), as amended, 41 U.S.C. §§ 601–613. Because the defendants' counterclaim is compulsory under Rule 13(a), the court concludes that the plaintiff's assertion of sovereign immunity is not a bar to their counterclaim. The court, however, determines that the defendants did not exhaust the administrative protocol under the CDA before filing their counterclaim and therefore dismisses the counterclaim without prejudice for want of subject-matter jurisdiction. Additionally, because a limited stay of these proceedings would allow the defendants time to comply with the necessary administrative process, the court invites the parties to brief the option of a limited stay pending the defendants' exhaustion of administrative remedies.

## II. BACKGROUND

### A. Factual Background

The United States has financed privatization-policy and transaction initiatives involving foreign commerce markets since the early 1980s. Compl. ¶ 7. In collaboration with host nations, it has developed privatization programs in countries such as Poland, Honduras, and Jamaica. *Id.* The United States also supports initiatives to privatize civilian and defense industries in the newly independent states ("NIS") of the former Soviet Union, and has contracted with private companies to provide the technical assistance necessary to implement these privatization projects. *Id.* ¶ 8.

In connection with this effort, the plaintiff entered into an agreement with defendant Intrados/International Management Group and the individual defendants, Fariborz Ghadar, Margaret Ghadar, and Liz De Tuerk Ghadar (collectively "the defendants") for them to provide training services in several of the now-independent former-Soviet states. *Id.* ¶ 9. Specifically, in 1994 the plaintiff issued contract number NIS 110–005–C–00–4011–00 to the defendants for the awarded amount of $8,165,855.00 ("the contract"). *Id.* The contract obligates the defendants to train mid-level government officials on the privatization of markets and other economic reforms that would ease the transition from command-and-control economies to their capitalistic market-based counterparts. *Id.* According to the contract, the defendants may seek reimbursement from the plaintiff, separate from the awarded amount, for certain allowable costs incurred in connection with the contract work. *Id.* ¶¶ 9–10; Defs.' Mot. to Dismiss

---

1. Recoupment is "[t]he right of a defendant to have the plaintiff's claim reduced or eliminated because of the plaintiff's breach of contract or duty in the same transaction." BLACK'S LAW DICTIONARY (7th ed.1999); *accord Reiter v. Cooper*, 507 U.S. 258, 264, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993) (defining recoupment as "the setting off against asserted liability of a counterclaim arising out of the same trans-action"); *see also Equal Employment Opportunity Comm'n v. First Nat'l Bank of Jackson*, 614 F.2d 1004, 1008 (5th Cir.1980) (explaining that "to state a claim in recoupment, a counterclaim must assert a claim arising out of the same transaction or occurrence which is the subject matter of the government's suit and seeks relief only to the extent of diminishing or defeating the government's recovery").

("Defs.' Mot.") Ex. A (Contract § B). The contract expressly requires the defendants to follow certain procedures, including the calculation of invoices pursuant to set mathematical formulas, when submitting invoices for reimbursement. Compl. ¶¶ 10–12; Defs.' Mot. at 3.

The plaintiff asserts that, from November 1994 to October 1996, the defendants routinely and knowingly submitted false or fraudulent invoices and incurred-cost submissions to the plaintiff, seeking reimbursement for costs that are impermissible under the contract and the applicable federal-procurement regulations. Compl. ¶¶ 13–14. In addition, the plaintiff alleges that, on October 22, 1996, the defendants submitted a false incurred-cost submission regarding the same improper expenditures. Id. ¶ 15. The plaintiff further claims that the individual defendants generated false corporate records, general ledgers, and other accounting data that concealed the personal nature of the unallowable costs by accounting for them as "salaries," "overhead," or "travel allowances." Id. ¶¶ 17–18. Given that each of the invoices contain an implied certification that the sum claimed is properly due under the contract pursuant to the plaintiff's procurement regulations, the plaintiff regards the implied certifications submitted by the defendants as false. Id. ¶¶ 19–20.

In response to these allegations, the defendants filed a counterclaim for recoupment, asserting that the plaintiff breached the contract by allegedly "fail[ing] to pay invoices properly submitted by [the defendants] for work performed under the [ ] contract." Countercl. ¶ 2. The defendants specifically assert that, on or about March 31, 1997, following their completion of a "task order for performance in the country of Moldova" ("the Moldova task order"), the plaintiff demanded that the defendants continue their work in Moldova for an additional four-and-a-half months pending the award of a separate contract and task order. Id. ¶ 8. The defendants add that not only did the plaintiff's contracting officer authorize extensions of the Moldova task order, but that the contracting officer's representative "threatened that if [the defendants] stopped working in Moldova, [they] would never work for the U.S. government again." Id. The defendants allegedly incurred $77,317.00 in additional expenses while performing the Moldova task order during that additional period. Id. ¶ 9. The defendants contend that the plaintiff improperly refused to pay them a total of $525,049.00, inclusive of the expenses relating to the Moldova task order.[2] Id. ¶¶ 9–10.

### B. Procedural History

The plaintiff commenced this action by filing its complaint on April 10, 2001. On

2. The defendants allege that they submitted the following unpaid invoices to the plaintiff:

| Task Order | Invoice No. | Invoice Amt. | Paid | Balance Due |
|---|---|---|---|---|
| NIS Home Office | 007 | $ 22,390.00 | $ 4,380.00 | $ 18,009.00 |
| 4–131–INTMoldova | 009 | $148,595.00 | $71,277.00 | $ 77,317.00 |
| 1–0074–INTKazakstan | 0013 | $279,553.00 | $ 0.00 | $279,553.00 |
| 3–0121–INTUkraine | 008 | $ 81,672.00 | $ 0.00 | $ 81,672.00 |
| 5–0139–INTUkraine | 002 | $ 47,311.00 | $ 35.00 | $ 47,276.00 |
| 2–88–INT PRC Russia | 006 | $ 31,266.00 | $ 44.00 | $ 31.222.00 |
| | | | | $535,049.00 |

Countercl. ¶ 11. The court notes that these calculations include mathematical errors, specifically with respect to the resulting sums noted in the "Balance Due" column. For example, regarding Invoice No. 007, when subtracting the figure noted in the "Paid" column from the figure noted in the "Invoice Amt." column, the resulting balance equals $18,010.00 rather that the defendants' calculated amount of $18,009.00. Id.

May 3, 2002, after having requested and secured leave to late-file a response to the complaint, the defendants filed a motion to dismiss asserting that their submitted invoices are not false as a matter of law, that the complaint is not pled with the particularity required by Rule 9(b), and that the applicable statutes of limitations bar the plaintiff's claims. Defs.' Mot. at 5–14. On August 2, 2002, the court granted in part and denied in part the defendants' motion to dismiss, concluding that some of the plaintiff's claims were indeed time barred.[3] *United States v. Intrados/Int'l Mgmt. Group*, 265 F.Supp.2d 1, 10, 13–14 (D.D.C. 2002). On August 22, 2002, the defendants filed an answer to the plaintiff's complaint, which also included their counterclaim for recoupment based on the amounts allegedly owed to them by the plaintiff under the contract. Answer & Countercl. In response, the plaintiff filed its motion to dismiss the defendants' counterclaim. The court now addresses the plaintiff's motion to dismiss the defendants' counterclaim.

### III. ANALYSIS

#### A. Legal Standard for a Rule 12(b)(1) Motion to Dismiss a Counterclaim

■ Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938). On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the counterclaimant bears the burden of establishing that the court has subject-matter jurisdiction. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *Rasul v. Bush*, 215 F.Supp.2d 55, 61 (D.D.C.2002) (Kotelly, J.) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182–83, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). The court may dismiss a counterclaim for lack of subject-matter jurisdiction only if " 'it appears beyond doubt that the [counterclaimant] can prove no set of facts in support of his claim which would entitle him to relief.' " *Empagran S.A. v. F. Hoffman–LaRoche, Ltd.*, 315 F.3d 338, 343 (D.C.Cir.2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

■ Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the counterclaim's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C.Cir.2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F.Supp.2d 9, 13 (D.D.C.2001). Moreover, the court is not limited to the allegations contained in the counterclaim. *Hohri v. United States*, 782 F.2d 227, 241 (D.C.Cir. 1986), *vacated on other grounds*, 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). Instead, to determine whether it has jurisdiction over the counterclaim, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C.Cir.1992).

---

3. Having determined that the applicable statutes of limitations are not tolled for the defendants' four invoices submitted before April 10, 1995 along with the common-law claim of fraud, the court dismissed those claims. *United States v. Intrados/Int'l Mgmt. Group*, 265 F.Supp.2d 1, 10, 13–14 (D.D.C.2002).

Consequently, the two FCA claims relating to invoices submitted on or after April 10, 1995, as well as the common-law claims of mistake-by-payment and unjust enrichment, survived the defendants' motion to dismiss. *Id.* at 10, 13.

## B. The Court Grants the Plaintiff's Motion to Dismiss Without Prejudice

### 1. The Defendants' Counterclaim is Compulsory

■ The court begins its analysis with a determination of whether the defendants present a proper recoupment counterclaim and, if so, whether the counterclaim is compulsory. Courts have held that "[t]o establish a recoupment claim, the defendant must meet three requirements: (1) the claim must arise from the same transaction or occurrence as the government's suit; (2) the relief sought must be of the same kind or nature as the [government's] requested relief; and (3) any damages sought cannot exceed the amount sought by the government's claim." [4] *United States v. Ownbey Enters., Inc.*, 780 F.Supp. 817, 820 (N.D.Ga.1991) (citing *Frederick v. United States*, 386 F.2d 481, 488 (5th Cir.1967)); *cf. Berger v. City of N. Miami, Fla.*, 820 F.Supp. 989, 992 (E.D.Va.1993) (determining that the contract counterclaims were not claims for recoupment because they do not arise from the same transaction as the original claim). Applying these considerations to the de-

fendants' counterclaim, the court concludes that the defendants assert a proper recoupment counterclaim.

■ First, the defendants' counterclaim for breach of contract arises from the same transaction or occurrence as the government's claims. *Id.* Courts measure recoupment claims by the "same transaction" language of Rule 13.[5] *Frederick*, 386 F.2d at 487; *accord Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 350 (D.C.Cir.2003) (accepting Rule 13(a) as the basis for determining "whether the two cases involve the same subject matter, and hence should be litigated in a single forum"). To determine whether the defendants' counterclaim arises from the same transaction or occurrence as the original claim, a court must construe the term "transaction" flexibly, so as to prevent the wasteful expenditure of parallel proceedings. *Columbia Plaza Corp. v. Sec. Nat'l Bank*, 525 F.2d 620, 625–26 (D.C.Cir.1975); *Fiondella v. Tidwell*, 1996 U.S. Dist. LEXIS 17462, at \*12 (D.D.C. Nov. 13, 1996) (Hogan, J.); *see also Tullos v. Parks*, 915 F.2d 1192, 1195 (8th Cir.1990) (quoting *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926)) (emphasizing the Supreme Court's flexible

---

**4.** Some courts have been wary of allowing defendants to raise a counterclaim in *qui tam* actions, speculating that it would have a chilling effect on such actions, and thereby contravene Congress' purpose in enacting statutes such as the FCA. *See Mortgages, Inc. v. United States Dist. Court for the Dist. of Nev.*, 934 F.2d 209, 214 (9th Cir.1991) (holding that "there is no basis in the FCA or federal common law to provide a right to contribution or indemnity in a FCA action" and directing the district court to dismiss the counterclaim). More recently, however, courts have permitted defendants in *qui tam* actions under the FCA to raise compulsory counterclaims. *See United States ex rel. Madden v. Gen. Dynamics Corp.*, 4 F.3d 827, 831 (9th Cir.1993) (permitting defendants to raise counterclaims for contribution or indemnity in a *qui tam* action under the FCA); 3 MOORE'S FED. PRAC.3d

§ 13.12[1], n. 2 (citing *Burch ex rel. United States v. Piqua Eng'g, Inc.*, 145 F.R.D. 452, 456–57 (S.D.Ohio 1992) (allowing the defendants in a *qui tam* action under the FCA to bring compulsory counterclaims for breach of contract)).

**5.** Rule 13(a) states, in pertinent part, that:

[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

FED. R. CIV. P. 13(a).

construction of the term "transaction"). Accordingly, courts have employed the generous "logical relationship" test, under which "a claim is deemed compulsory so long as the 'issues of law and fact raised by the claims are largely the same' and 'substantially the same evidence would support or refute both claims.'" *Fiondella,* 1996 U.S. Dist. LEXIS 17462, at *12–13 (quoting *Sanders v. First Nat'l Bank & Trust Co. in Great Bend,* 936 F.2d 273, 277 (6th Cir.1991)); *accord Moore,* 270 U.S. at 610, 46 S.Ct. 367 (defining the term "transaction" as "comprehend[ing] a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship"); *Tullos,* 915 F.2d at 1195; *Great Lakes Rubber Corp. v. Herbert Cooper Co., Inc.* 286 F.2d 631, 634 (3d Cir.1961) (stating that where claims "are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and economy require that the counterclaimant be permitted to maintain his cause of action"); *Washington Bancorporation v. Washington,* 1989 WL 180755, at *5, 1989 U.S. Dist. LEXIS 11437, at *14–15 (D.D.C. Sept. 26, 1989) (Lamberth, J.) (applying the "logical relationship" test to determine "that [the] plaintiffs' claim and [the] defendants' counterclaim are parts of a single controversy and that many of the same issues and factual circumstances, and much of the same evidence, will come into play in the resolution").

In the case at bar, the issues of law and fact presented by the defendants' counterclaim are similar to those in the plaintiff's claims because both rely on the same contract. *Id.* In support of its surviving statutory FCA and common-law claims, the plaintiff relies on the contractual clauses governing allowable costs and reimbursement. Compl. ¶ 11–12. Likewise, the defendants depend on the same legal instrument in bringing their counterclaim.

Countercl. ¶ 12. Thus, the parties' indispensable reliance on the same contract to establish their claims indicates that there is a "logical relationship" that is sufficient to maintain the Rule 13 "same transaction or occurrence" standard. FED. R. CIV. P. 13(a); *e.g., United States v. Irby,* 618 F.2d 352, 357 (5th Cir.1980) (affirming the lower court's finding of a logical relationship because "only one transaction form[ed] the basis of both claims").

With regard to the relief sought, courts have taken a conflicting approach to the issue of whether a recoupment counterclaim seeks relief that is of the same kind or nature as the original claim. Some courts have appeared hesitant to equate a defendant's counterclaim for recoupment with a plaintiff's claim that is limited to statutory relief. *E.g., Ownbey Enters.,* 780 F.Supp. at 820–21 (determining that the government's claim for civil penalties to ensure compliance with an administrative-agency order differed from the defendant's recoupment claim for alleged misrepresentation); *cf. United States v. 2,116 Boxes of Boned Beef,* 726 F.2d 1481, 1490 (10th Cir.1984) (explaining that where the government is not seeking a judgment for a sum of monetary damages, "the very nature of the action makes it impossible to reduce or discharge the claim by recoupment"); *but see United States v. Sherwin–Williams Co.,* 2001 U.S. Dist. LEXIS 25120, at *16 (C.D.Ill. July 13, 2001) (concluding that "the same kind of relief requirement for a recoupment claim is met whenever the defendant can demonstrate that the plaintiff's claim and the defendant's [counter]claim are fungible [because c]ivil penalties are clearly monetary in nature"). Many courts, however, have readily allowed a recoupment counterclaim that is in response to a claim for non-statutory, monetary damages. *Ownbey Enters.,* 780 F.Supp. at 820–21 (noting in dicta that had

the government sued to recover damages and costs, not statutory penalties, the relief requested would have been the same and the recoupment claim would have been permitted); *e.g., United States v. Amtreco, Inc.*, 790 F.Supp. 1576, 1582 (M.D.Ga.1992) (recognizing that a recoupment claim involved the same kind of relief as the government's claim where the government sought the costs arising from a "cleanup operation" and the defendants sought to recover costs of property loss resulting from that transaction); *United States v. Moore*, 703 F.Supp. 455, 458–59 (E.D.Va. 1988) (permitting the defendant to bring a monetary recoupment claim when the government seeks to recover cleanup costs under a statute and the defendant claims that the government caused the need for the cleanup); *Fed. Deposit Ins. Corp. v. Carter*, 701 F.Supp. 730, 732–33 (C.D.Cal. 1987) (allowing a recoupment claim where both the government and the defendant seek damages arising from the same transaction).

Here, the plaintiff prays for treble damages and civil penalties under the FCA, as well as damages relating to its two remaining common-law claims. Compl. at 12. In their counterclaim, the defendants seek to offset any of the plaintiff's recovery plus interest. Countercl. ¶ 13. Even though the plaintiff seeks civil penalties under the FCA and the case law is in conflict on this issue, the court recognizes that, in light of the plaintiff's remaining common-law theories, the parties seek monetary relief that is of the same nature as the recoupment sought by the defendants. *Sherwin–Williams Co.*, 2001 U.S. Dist. LEXIS 25120, at *16; *e.g., Moore*, 703 F.Supp. at 458–59; *Fed. Deposit Ins. Corp.*, 701 F.Supp. at 732–33.

Lastly, the court recognizes that the recoupment amount sought by the defendants does not exceed the amount sought by the plaintiff. *Compare* Compl. *with* Countercl. A simple reading of the plaintiff's complaint indicates that the damages prayed for in the surviving common-law claims alone far exceed the recoupment amount sought by the defendants. *Id.*

■ In sum, the court concludes that the defendants have met the three criteria for a recoupment claim. *Ownbey Enters., Inc.*, 780 F.Supp. at 820 (citing *Frederick*, 386 F.2d at 488). In addition, the Supreme Court recognizes that a recoupment counterclaim is compulsory. *Reiter v. Cooper*, 507 U.S. 258, 263–64, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993); *accord Frederick*, 386 F.2d at 488; *Ownbey Enters.*, 780 F.Supp. at 820. Thus, the court determines that the defendants have alleged a valid and compulsory recoupment counterclaim.

## 2. The Defendants Do Not Properly Assert Their Counterclaim

### a. Sovereign Immunity Is Not a Bar to the Defendants' Counterclaim

■ Although "a suit in the name of the United States does not amount to a waiver of sovereign immunity subjecting the United States to an affirmative adverse judgement on a counterclaim[, the] counterclaim may be asserted against a sovereign by way of . . . recoupment to defeat or diminish the sovereign's recovery." *United States v. Agnew*, 423 F.2d 513, 514 (9th Cir.1970); *see also United States v. Dalm*, 494 U.S. 596, 611, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990) (noting that the doctrines of recoupment and sovereign immunity "only [ ] permit a transaction which is made the subject of suit by plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole") (quoting *Rothensies v. Elec. Storage Battery Co.*, 329 U.S. 296, 299, 67 S.Ct. 271, 91 L.Ed. 296 (1946)); *Bull v. United States,*

295 U.S. 247, 261, 55 S.Ct. 695, 79 L.Ed. 1421 (1935) (explaining that "[a] claim for recovery of money ... may be used by way of recoupment and credit in an action by the United States arising out of the same transaction"); *United States v. Ringgold*, 33 U.S. 150, 163, 8 Pet. 150, 8 L.Ed. 899 (1834) (discussing that "when an action is brought by the United States, to recover money in the hands of a party, who has a legal claim against them, it would be a very rigid principle, to deny to him the right of setting up such claim in a court of justice, and turn him round to an application to [C]ongress"); *United States v. Forma*, 42 F.3d 759, 764 (2d Cir.1994) (discussing the recoupment-counterclaim exception and noting that "despite sovereign immunity, a defendant may, without statutory authority, recoup on a counterclaim an amount equal to the principal claim" (internal quotations omitted)); *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1344 (10th Cir.1982) (same); *Frederick*, 386 F.2d at 488 (same); *In re Greenstreet Inc.*, 209 F.2d 660, 663 (7th Cir. 1954) (same).

In this case, the government's affirmative act of filing this suit represents its waiver of sovereign immunity as to the defendants' compulsory counterclaim of recoupment. *Id.; see also Equal Employment Opportunity Comm'n v. First Nat'l Bank of Jackson*, 614 F.2d 1004, 1007 (5th Cir.1980) (citations omitted) (noting that "[t]he United States cannot be sued unless it specifically consents to be sued, either by specific statutory consent, [ ] or by instituting a suit as to which a defendant may plead matters in recoupment"). In short, the defendants may overcome governmental immunity by asserting their recoupment counterclaim. *Forma*, 42 F.3d at 764 (pointing out that "[d]espite sover-

eign immunity, 'a defendant may, without statutory authority, recoup on a counterclaim an amount equal to the principal claim' " (quoting *United States v. U.S. Fid. & Guar. Co.*, 309 U.S. 506, 511, 60 S.Ct. 653, 84 L.Ed. 894 (1940))); *United States ex. rel. Kirsch v. Armfield*, 56 F.Supp.2d 588, 592 (W.D.Pa.1998); *Ownbey Enters.*, 780 F.Supp. at 820 (citing *Frederick*, 386 F.2d at 488).

### b. The Defendants Failed to Exhaust Administrative Protocol Before Asserting Their Counterclaim

Although the defendants' counterclaim does not directly mention the CDA, the CDA does prescribe the method by which the defendants must proceed to bring a claim that arises from a government contract. 41 U.S.C. § 605. It is not surprising then that both the plaintiff's motion to dismiss and the defendants' opposition thereto clarify that the defendants base their counterclaim on the CDA. Pl.'s Mot. to Dismiss ("Pl.'s Mot.") at 11; Defs.' Opp'n. at 7. Thus, the court will look to the requirements of the CDA to see whether it has subject-matter jurisdiction over the defendants' counterclaim.

Under the CDA, a contractor make take recourse against the government's alleged breach by submitting a written claim to the contracting officer for a final decision prior to commencing suit. 41 U.S.C. § 605(a); *A & S Council Oil Co., Inc. v. Lader*, 56 F.3d 234, 241 (D.C.Cir.1995); *Gonzalez v. Dev. Assistance Corp.*, 1989 WL 205634, at *2, 1989 U.S. Dist. LEXIS 6921, at *5–6 (D.D.C. June 21, 1989) (Oberdorfer, J.). The CDA confers subject-matter jurisdiction over any appeal of a contracting officer's final decision on the United States Court of Federal Claims.[6]

---

**6.** The CDA explicitly confers subject-matter jurisdiction to the Court of Federal Claims

when it comes to an appeal of a contracting officer's final decision. 41 U.S.C. §§ 606,

Nonetheless, the contractor must first seek redress of its grievances by submitting a valid written claim to the contracting officer. 41 U.S.C. §§ 606, 609; *A & S Council Oil Co.*, 56 F.3d at 241; *Mobility Sys. & Equip. Co. v. United States*, 51 Fed.Cl. 233, 235 (2001) (holding that subject-matter jurisdiction rests with either the agency's board of contract appeals or the Court of Federal Claims following the submission of a written claim to the contracting officer and that officer's final decision).

Simply put, "the contracting officer's decision is the 'linchpin' for judicial review of contract claims under the CDA." *Blinderman Constr. Co. v. United States*, 39 Fed. Cl. 529, 558 (1997) (quoting *Paragon Energy Corp. v. United States*, 227 Ct.Cl. 176, 645 F.2d 966, 967 (1981), *aff'd*, 230 Ct.Cl. 884 (Ct.Cl.1982), *cited with approval in McDonnell Douglas Corp. v. United States*, 754 F.2d 365, 370 (Fed.Cir.1985)). With the passage of the CDA, "Congress sought to promote the efficient resolution of contract claims by relying in the first instance upon the contracting officer's general experience in the administration of [g]overnment contracts and specific knowledge of the contract and parties in ques-

tion." *Id.* at 560 (citing *Joseph Morton Co. v. United States*, 757 F.2d 1273, 1280 (Fed.Cir.1985)). Thus, for the court to accept jurisdiction over the defendants' counterclaim here without the defendants exhausting the administrative protocol would frustrate the scheme of the CDA. *Id.*

A valid claim submitted to a contracting officer includes such routine submissions as "vouchers, invoices, and similar requests for payment[, which] are 'submitted for work done or equipment delivered by the contractor in accordance with the expected or scheduled progression of contract performance.'" *James M. Ellett Constr. Co., Inc. v. United States*, 93 F.3d 1537, 1542 (Fed.Cir.1996) (quoting *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1577 (Fed.Cir.1995) (*en banc*)). In order to meet the definition of a valid claim, such "routine request[s] for payment ... *must ... be in dispute* when submitted" to the contracting officer. *Id.* (citing 48 C.F.R. § 33.201 [7] and *Reflectone*, 60 F.3d at 1576) (internal quotations omitted and emphasis added). Therefore, an invoice that is not in dispute at the time of submission is not a proper claim under the CDA. *Id.; Kala-*

609; *A & S Council Oil Co.*, 56 F.3d at 241; *United States v. Roarda, Inc.*, 671 F.Supp. 1084, 1085 (D.Md.1987) (holding that "the CDA provides the exclusive method for challenging the final decision of the Contracting Officer, and that this [c]ourt is without jurisdiction to consider challenges to such decisions" (internal quotations omitted)). The court, however, recognizes that, in light of its determination that the defendants' counterclaim arises from the same transaction and occurrence as the plaintiff's claims, its has jurisdiction to hear the counterclaim. *Columbia Plaza Corp.*, 525 F.2d at 626, 629 (using Rule 13(a) to determine that two actions from separate judicial districts were of a single controversy and were best heard by that court because "the wasteful expenditure of energy and money incidental to separate litigation of identical issues should be avoided"); *Livera v.*

*First Nat'l State Bank of N.J.*, 879 F.2d 1186, 1195–96 (3d Cir.1989) (explaining that "[t]he Supreme Court has held that when the United States institutes an action, a defendant may assert by way of recoupment any claim arising out of the same transaction or occurrence as the original claim in order to reduce or defeat the government's recovery" (emphasis omitted)).

7. The Federal Acquisition Regulations define a "claim" as "'a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.'" *Blinderman Constr. Co.*, 39 Fed.Cl. at 557–58 (quoting 48 C.F.R. § 33.201).

*mazoo Contractors, Inc. v. United States,* 37 Fed.Cl. 362, 368 (1997).

■ Here, the plaintiff argues that the defendants have neglected to comply with the statutory provisions of the CDA and that, as a result, this court lacks subject-matter jurisdiction over the counter-claimed matter. Pl.'s Mot. at 11–12. Specifically, the plaintiff asserts that the "defendants' counterclaim is devoid of any information whatsoever regarding the administrative steps" called for under the CDA, pointing to the defendants' failure to submit a valid written claim to the contracting officer. *Id.* at 11. In response, the defendants make only conclusory allegations, arguing that the counterclaim itself is sufficient under Rule 8(a). Defs.' Opp'n. at 7 (citing Countercl. ¶¶ 9–11). They also note that the counterclaim includes the invoice dates, the amount of the invoices, the task order to which each invoice applies, and state that the defendants "properly submitted" the invoices. *Id.*

While the defendants are correct to assert that, under Rule 8(a), "[t]he counterclaim need allege no more than that to put the government on notice of the essential facts underlying the claim," *Id.;* FED. R. CIV. P. 8(a), their assertion ignores the fundamental principle that a defendant must convince the court of the jurisdictional basis for his counterclaim.[8] FED. R. CIV. P. 12(b)(1); *McNutt,* 298 U.S. at 182–83, 56 S.Ct. 780; *Macharia,* 334 F.3d at 64,

69; *Evans,* 166 F.3d at 647; *Rasul,* 215 F.Supp.2d at 61. In particular, the court's jurisdiction is conditioned on the defendants first having submitted their claim to the contracting officer at the United States Agency for International Development for a final decision before commencing suit against the government. 41 U.S.C. §§ 606, 609; *A & S Council Oil Co.,* 56 F.3d at 241; *Gonzalez,* 1989 WL 205634, at *1, 1989 U.S. Dist. LEXIS 6921, at *5–6. Moreover, given the defendants' burden under Rule 12(b)(1), the court is inclined to require the defendants to furnish the court with sufficient proof of their compliance with the prescribed administrative protocol explicitly set forth in the CDA. *McNutt,* 298 U.S. at 182–83, 56 S.Ct. 780; *Macharia,* 334 F.3d at 64, 69; *Evans,* 166 F.3d at 647; *Rasul,* 215 F.Supp.2d at 61. The record indicates that the defendants have not offered any evidence demonstrating that they submitted a written claim to the contracting officer, let alone that their claim was in dispute at the time of submission. As noted, the defendants rely only on conclusory allegations—such as their assertions that "[t]he invoices were properly certified[ ]" and "properly submitted"—to support their position.[9] Defs.' Opp'n at 7–8. In contrast, the plaintiff presents a strong showing that the defendants have failed to comply with the statutorily prescribed administrative protocol of the CDA, suggesting to the court that the defendants have simply misconstrued its

8. Although the defendants maintain that the plaintiff cites no authority in support of its proposition that the defendants first must submit their counterclaim to the contracting officer, the court need not venture any further than the plaintiff's motion to discover explicit references to this requirement in the CDA, including precedent from this circuit. Defs.' Opp'n. at 7; Pl.'s Mot. at 11 (citing 41 U.S.C. §§ 606, 609; *Gonzalez,* 1989 WL 205634, at *1, 1989 U.S. Dist. LEXIS 6921, at *2); *see also A & S Council Oil Co.,* 56 F.3d at 241.

9. The defendants also allege that the plaintiff's contracting officer authorized extensions of the Moldova task order and that the contracting officer's representative "threatened that if [the defendants] stopped working in Moldova, [they] would never work for the U.S. government again." Countercl. ¶ 8. These allegations do not have any bearing on the jurisdictional hurdle before the court. FED. R CIV. P. 12(b)(1).

requirements. Pl.'s Mot. at 11–12; Pl.'s Reply at 8.

The court agrees with the plaintiff and concludes that the defendants have not carried their burden in establishing that they have exhausted their administrative remedies under the CDA. 41 U.S.C. § 605(a); *McNutt,* 298 U.S. at 182–83, 56 S.Ct. 780; *Macharia,* 334 F.3d at 64, 69; *Evans,* 166 F.3d at 647; *Rasul,* 215 F.Supp.2d at 61. Because the defendants have failed to sufficiently demonstrate that they have submitted a "clear and unequivocal" claim to the contracting officer, the court is obliged to dismiss the counterclaim for want of subject-matter jurisdiction. *Id.; Reliance Ins. Co. v. United States,* 931 F.2d 863, 866 (Fed.Cir.1991); *Kiewit Constr. Co. v. United States,* 56 Fed.Cl. 414, 419 (2003). Accordingly, the court dismisses the defendants' counterclaim without prejudice for failure to exhaust the necessary administrative remedies under the CDA. *United States v. Dico, Inc.,* 136 F.3d 572, 580 (8th Cir.1998) (instructing the district court to clearly label its decision dismissing the counterclaim "without prejudice").

### C. The Court Invites Briefing on the Appropriateness of a Limited Stay of Proceedings Due to the Potential Ramifications of Dismissing the Defendants' Counterclaim

The court's task is incomplete without considering one final point. In dismissing the defendants' compulsory counterclaim without prejudice, the court is concerned that it may resolve the underlying action before the defendants are able to exhaust administrative remedies and, if necessary, reassert their counterclaim. *Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, n. 1, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974) (noting "[a] counterclaim which is compulsory but is not brought is thereafter barred"). Such a scenario may foreclose the defendants' ability to assert their counterclaim. *Burch ex rel. United States v. Piqua Eng'g, Inc.,* 145 F.R.D. 452, 457 (S.D.Ohio 1992) (explaining that if the court were to dismiss the compulsory counterclaim, the court's decision may "deny [the] defendant the opportunity to have its compulsory counterclaim resolved in a judicial forum" because the defendant may not assert the compulsory counterclaim in a subsequent action). In short, the court seeks to avoid the possibility that the defendants' counterclaim would be barred if the court were to proceed to resolve the plaintiff's claims before the defendants exhaust administrative remedies and reassert their counterclaim. *Id.* Thus, the court invites the parties to brief the court on the appropriateness of a limited stay of the proceedings pending the defendants' exhaustion of administrative remedies.

### IV.  CONCLUSION

For the foregoing reasons, the court grants the plaintiff's motion to dismiss the defendants' counterclaim without prejudice and invites the parties to brief the court on the appropriateness of a limited stay of the proceedings. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this _____ day of August 2003.